POPE *v.* ALEXANDER *et al.*

(*Jackson,* April Term, 1952.)

Opinion filed June 7, 1952.

PIGFORD & KEY, of Jackson, for appellants trustees.

KEITH SHORT, of Jackson, for appellant Administrator and Heirs of Mary Alexander Hartmus.

JACK MANHEIN, of Jackson, for appellee in error.

Mr. Justice Burnett delivered the opinion of the Court.

This bill was filed by the administrator with the will annexed of the estate of Thomas H. Hartmus, deceased, seeking a construction of certain clauses of the will of the deceased, an adjudication of the validity of some of the provisions of the will, and a judicial determination of the duties and responsibilities of the said Pope as administrator, etc. According to the allegations of the bill a number of conflicting contentions between the interested parties had arisen and for, this fact and due to the vagueness and uncertainty of some of the provisions of the will the bill was filed.

The bill was filed against the administrator with the will annexed of the estate of Mrs. Mary Alexander Hartmus, against her heirs and against the testamentary trustees named in the will of Thomas H. Hartmus and the trustees of the Browns Church Cemetery Association.

Mr. Hartmus died testate on May 8, 1948. His wife Mary Alexander Hartmus died some 12 days later. In her will which was made about 20 years before her death she left all of her estate to her husband with the exception of certain specific bequests of small items of jewelry. This contest is between the heirs of Mrs. Hartmus and the testamentary trustees of a trust created by Mr. Hartmus in his will. The trustees of Browns Church Cemetery Association are made parties defendant but

they do not answer and apparently leave any interests that they might have to a proper disposition by the court.

Six questions were posed in the bill for the Chancellor's answer. We have concluded that his response to each of these questions was correct. In this opinion we will treat each of these questions, though not in the order of the questions as posed in the bill.

The first question for our consideration is numbered "2" in the bill and asks the court for a determination as to whom the administrator should deliver the proceeds of a life insurance policy on Mr. Hartmus. This policy was of long standing and was made payable to the estate of Mr. Hartmus. After his death the proceeds were paid by the insurance company to Mr. Hartmus' administrator with will annexed. The will of Mr. Hartmus makes no mention of this insurance policy and it was not assigned or designated to any particular person or party. This being true the proceeds of this insurance policy should be paid by Mr. Hartmus' administrator with the will annexed to the administrator of his widow. Code Section 8456 provides among other things that insurance under the circumstances here "inure to the benefit of his widow and children;—". There were no children. Mr. Hartmus made no disposition of this insurance in his will or otherwise and therefore the money would belong to his widow and in turn to her administrator with the will annexed. Compare *American Trust & Banking Co.* v. *Twinam,* 187 Tenn. 570, 216 S. W. (2d) 314 and authorities therein cited.

The question was asked of whether or not the estate of Mrs. Hartmus was entitled to a widow's years support. This question was answered in the negative by the Chancellor and we think that the briefs of counsel·

concede, for obvious reasons, that this question was correctly answered.

The main purpose of the testator's will was to provide for the maintenance of his widow during her life. At her decease he provided that certain funds which had been ordered turned over to the trustees under his will should be applied to other purposes. Among these assets were certain shares of stock in The First National Bank of Jackson, Tennessee, and $400 in money which were assigned by the testator a month or so before his death to an individual with the direction in the assignment that:

"The said certificates of stock shall be held in trust during my lifetime for the use and benefit of the Thomas H. Hartmus Trust Fund for which I have provided in the Third Article of my last will and testament; and after my death and when my said last will and testament shall have been probated and the executors and trustees therein provided for have been appointed and qualified, the said M. B. Key, the trustee herein named shall transfer and assign these certificates of stock to the executors thus appointed and qualified, the same then to be held by them for the use and benefit of said Thomas H. Hartmus Trust Fund."

After Mr. Hartmus' death these certificates and this fund were turned over to the administrator with the will annexed of his estate. We think that unquestionably this was correct. It seems quite certain to us from portions of this intervivos trust above quoted that this was the purpose and intention of the trust, that is, that it be held by this trustee until his death and then turned over to his representative under his will as it was. This stock and money became a part of the estate

of the deceased and was properly delivered to his administrator with the will annexed.

The will provided that the trustees of the estate upon the death of the widow of Mr. Hartmus should pay her burial expenses up to $300. The Chancellor decided, and we think it is conceded in the briefs that he correctly did so, that said trust fund should bear the expense of her burial not to exceed $300. The will directed that his estate erect certain monumental markers at the graves of the deceased and his wife. The Chancellor decided, and we think correctly so, that this was a responsibility of the administrator with the will annexed and that these monuments were to be paid for out of the funds of Mr. Hartmus.

The bone of contention between the appellants is over the answer the Chancellor gave to question No. 1. This question is: ''Is the testamentary trust created in the will valid in part or in whole?''

This question arises by reason of the fourth paragraph of the testator's will which is as follows:

''*Fourth*: After the death of my wife, the net income of the remainder of this trust fund shall be paid over annually, on or before the first day of March in each succeeding year, to the Board of Trustees of the Brown's Church Cemetery Association, one half of which shall be used by said trustees in the maintenance of the Walter Key-Martin Key Family Cemetery located just West of old Claybrook, Tennessee, and the other half shall be used by said Board of Trustees for the maintenance of the Brown's Church Cemetery located about seven miles Northeast of Jackson, Tennessee.''

The parties stipulated that the Brown's Church Cemetery Association is a Cemetery Association and owns a

tract of land where people had been buried for over 100 years and it is well kept in a good state of repair and is a going cemetery association and has an active board of trustees through whom its business is carried on and who hold title to the property. They stipulated as to the Walter Key-Martin Key Family Cemetery that it is a family cemetery that has been maintained only by this family for some 100 years, that it is located on the lands belonging to an individual and has been maintained by the ancestors and kinsmen of the testator and that there is no connection between this cemetery and the cemetery of the Brown's Church referred to in the will. It is also stipulated that the deceased and his wife are buried in the Brown's Church Cemetery.

The Chancellor held that the trusts insofar as the Brown's Church Cemetery was concerned was a valid trust but that the trust to the Walter Key-Martin Key Family Cemetery was invalid because it violated the rule against perpetuities.

 The general rule is that a valid charity is established where the purposes for which it is created is to maintain or upkeep a public cemetery. 10 Am. Jur., page 636, Sec. 74. As contra distinguished from a public cemetery the general rule is that where a trust is created for a private cemetery and to take care of private graves that it is void as a perpetuity.

"It is now well settled that in the absence of statute, a bequest for the perpetual care, improvement or embellishment of a tomb, monument, or burial lot of the testator, his family, relatives, or other individuals named is not a bequest for a charitable purpose, and is void as a perpetuity." 10 Am. Jur., page 637, Sec. 75.

This Court has followed the latter rule for over 100 years. See *Hornberger* v. *Hornberger,* 59 Tenn. 635; *Fite* v. *Beasley,* 80 Tenn. 328; *Travis* v. *Randolph,* 1938, 172 Tenn. 396, 112 S. W. (2d) 835, and note in 15 Tennessee Law Review, 644.

We are asked to overrule these cases. We decline to do so because we think that the basic reason for these opinions is sound now as it was when they were written. Furthermore this is the general rule and we know of no legitimate exception that should be applied here.

The argument is made by the appellant Alexander and the heirs of Mrs. Hartmus that if the trust is void as to this private cemetery that it likewise should be void as to the public cemetery, that is, the Brown's Church Cemetery. It is said that trusts are so intertwined in the fourth paragraph of the will, above quoted, that they are inseparable and that the entire gift should be treated as inseparable and the whole gift declared void. We cannot accept this argument. In the first place the upkeep of the family lot or cemetery really is a family affair and not one in which the county or community or state is interested while the upkeep of the public cemetery is regarded to the contrary. There is a social interest in the maintenance of the plot where the dead of the town or the county are buried. Such cemeteries as the Browns Church Cemetery which is a church cemetery is naturally of a quasi public nature and their upkeep is generally, as far as we know, universally regarded as a charitable enterprise. Such a trust does not violate the rule against perpetuities while the trusts of a private character does so violate. See authorities heretofore cited.

These two trusts are not so interwoven or intertwined that they cannot be separated. Where the good can be

saved it is our duty to save it. This Court said in the Hornberger case, supra, that: "If, afterward he made an illegal devise, carving out of the charity fund a fund for a perpetuity, which must fail, we are not at liberty because of the dependent and illegal devise to avoid the whole will; but rejecting the part that is repugnant to law and public policy, we must allow the part which is lawful to be the will of the testator; that which is primary and valid must stand; that which is secondary and void must fail."

For the reasons stated we are convinced that the Chancellor was correct in his decree herein. The decree of the Chancellor is accordingly affirmed and the costs will be paid one-half by the estate of Mrs. Hartmus and the other half by Mr. Hartmus' estate.