**Ruth K. CHILD et al., Appellants,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 1024, 1025, Dockets 76–6030, 76–6036.**

United States Court of Appeals,
Second Circuit.

Argued May 21, 1976.

Decided Aug. 19, 1976.

Henry H. Willmott, Watertown, N. Y., for appellant Nat. Bank of Northern N. Y.

Lawrence Conboy, Conboy, McKay, Bachman & Kendall, Watertown, N. Y., for appellant Watertown Cemetery Ass'n.

Jonathan S. Cohen, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C. (James M. Sullivan, Jr., U. S. Atty., N. D. N. Y., Syracuse, N. Y., Scott P. Crampton, Asst. U. S. Atty., Gilbert E. Andrews and William A. Whitledge, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before LUMBARD, ANDERSON and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal presents the question whether a general bequest to a non-profit cemetery association is deductible for estate tax purposes as a bequest to an entity organized exclusively for charitable or religious purposes. The National Bank of Northern New York, as executor of the estate of Elizabeth M. Haas,[1] and the Watertown Cemetery Association, a principal beneficiary of that estate, appeal from a judgment of the United States District Court for Northern District of New York, Edmund Port, *Judge,* denying a petition for

1. The complaint also named Ruth K. Child, co-executor, as a party plaintiff. Subsequent to the filing of the complaint Ruth K. Child died, leaving the bank as the sole executor.

refund of estate taxes paid under protest, and dismissing the complaint of Watertown Cemetery Association for lack of jurisdiction.

■ Elizabeth M. Haas, who died on January 15, 1966, bequeathed a large portion of her ample estate to two nonprofit cemetery associations located in northern New York State. She left $25,000 to the Grove Cemetery Association in LaFargeville, New York, partly for the perpetual care of the Frederick Wetterham family burial plot.[2] To the Watertown Cemetery Association of Watertown, New York, she bequeathed a 50 per cent portion of her residuary estate, a share which approximates $2,500,000. The executor claims that the two cemetery associations are "charitable" or "religious" entities within the meaning of 26 U.S.C. § 2055(a)(2)[3] and that under that provision the estate is entitled to an estate tax deduction for the two bequests.[4] The Commissioner rejected the claim. The estate thereupon paid under protest the sum of $935,096.66 in federal estate taxes and interest on the cemetery bequests. This action was brought for refund of $916,085.78 of that amount; the remainder has been voluntarily refunded by the Commissioner. The district court rejected the refund claim, ruling that the cemeteries are not "corporation[s] organized and operated exclusively for religious [or] charitable . . . purposes . . . ." 26 U.S.C. § 2055(a). We affirm.[5]

The executor does not argue that bequests to cemeteries will always qualify for estate tax deduction under § 2055. Such a position would be most difficult to maintain in view of the legislative history of the estate tax and income tax provisions relating to charitable and religious entities. The 1939 Internal Revenue Code did not expressly provide for either income or estate tax deductions for donations to cemetery associations. In 1954, however, the Code was amended to provide an express exemption from the *income* tax for "[c]emetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit . . . ." 26 U.S.C. § 501(c)(13). But it is significant

2. The parties have stipulated that $2,000 of this amount represents the actual cost of obtaining perpetual care services at the Grove Cemetery. The Government does not contest the deductibility of this amount from the taxable estate.

3. 26 U.S.C. § 2055(a) provides in part:

In general.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers . . .

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, . . . no part of the net earnings of which inures to the benefit of any private stockholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office . . . .

4. The executor also briefly suggests in the alternative that § 2055(a)(3) is the applicable statute. This subsection allows a deduction for gifts given in trust if, *inter alia,* they are used by the trustee exclusively for religious or charitable purposes. Our brother Anderson suggests that while the cemetery associations may not be organized exclusively for charitable or religious purposes as required by § 2055(a)(2), the Haas bequests were to be used exclusively for such purposes, as required by § 2055(a)(3). That is, the money was to be used for cemetery upkeep, not to aid in the sale of plots. In our view, however, the upkeep of a cemetery which does not have an exclusively charitable purpose cannot be said to be an exclusively charitable function. Since our decision will thus depend on the meanings of "charitable" and "religious" as those words are used throughout § 2055(a), and not on the differing wording of subsections (2) and (3), we need not decide whether the Haas bequests are trusts within the meaning of § 2055(a)(3).

5. The Government argues, and Judge Port held, that only the taxpayer has standing to bring a "civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . ." 28 U.S.C. § 1346(a)(1). Since we affirm the district court's judgment on the merits on the executor's appeal, we need not decide the question of the beneficiary's standing to join the refund litigation.

that this was done as a *special* exemption, wholly outside the rubric of "charitable" or "religious" status under § 501(c)(3).

At the very same time, 26 U.S.C. § 170(c)(5) was added to make clear that donations to such cemetery associations were specially defined as deductible for the purpose of computing the donee's *income* tax. This subsection was entirely distinct from the general deduction provision for donations to corporations, trusts and funds "organized and operated exclusively for religious, charitable . . . purposes," contained in 26 U.S.C. § 170(c)(2)(B). As the Senate Report on the 1954 Code stated, this new provision "extend[ed] the deduction for charitable contributions beyond those allowed under present law to contributions made to nonprofit cemetery and burial companies." S.Rep. on Int.Rev.Code of 1954, 83d Cong., 2d Sess. (1954); 1954 U.S.Code Cong. & Admin.News, pp. 4621, 4660.

No similar *estate* tax provision expanding deductibility for bequests to cemeteries either specially or as "charitable" or "religious" contributions has been made by Congress. The estate tax provision regarding such bequests in the 1939 and 1954 Codes is identical in content to the old income tax charitable contribution provision, *see* 26 U.S.C. § 170(c)(2), which the 1954 Congress felt did not extend to include gifts or bequests to cemetery associations. Under the congressional understanding and the prior case law, *see, e. g., Schuster v. Nichols,* 20 F.2d 179, 181 (D.Mass.1927), it appears that a per se rule allowing deduction for bequests to cemetery associations would be "beyond [that] allowed under present law . . . ." S.Rep. on Int.Rev.Code of 1954, *supra.*

In this situation, the executor is constrained to argue that the two cemetery association beneficiaries involved in this case serve in the traditional sense as charitable or religious enterprises. As was stated in *Gund's Estate v. Commissioner,* 113

F.2d 61, 62 (6th Cir. 1940) (bequest to association not deductible where no free burial space provided or less than fair value charged for burial or upkeep), *cert. denied,* 311 U.S. 696, 61 S.Ct. 134, 85 L.Ed. 451 (1941), "[a] cemetery association doubtless could be so organized and operated as to be a charitable organization within the meaning of the [Internal Revenue Code] . . . . ."

■ The factors relied upon by the executor in the present case, however fall short of such a result. The primary features of an allegedly charitable nature claimed for the Watertown Cemetery Association are that down through the years it has: (a) conveyed a section of lots to the Volunteer Firemen of Watertown at reduced price, which it has maintained free of charge; (b) in 1871 rehabilitated and has since maintained free of charge the adjacent Old Burrville Burying Ground; (c) in the 19th century contributed over $9,000 to the construction of an access road from the city limits of Watertown to the cemetery; (d) in 1885 dedicated a plot of 1,100 square feet to the Henry Keep Home, a nonprofit home for aged persons, for burial purposes; (e) in 1872 dedicated a plot of land without charge for the erection of a chapel; (f) has provided temporary winter storage of bodies destined for other cemeteries free of charge; and (g) has maintained a number of burial plots as to which no perpetual care payment was ever made and for which annual assessments are not being paid.[6] As the district court found, however, "[t]he Cemetery Associations did not make it a practice of providing free burial to indigents, nor is it their usual custom to provide any plots at reduced prices." Here, as in *Bank of Carthage v. United States,* 304 F.Supp. 77, 80 (W.D.Mo.1969), "[i]t appears the rich, the poor, and the in-between are treated alike." While some of the various functions claimed to be charitable by the cemetery may in fact be so, here as in *Bank of Carthage* "the conclusion is inescapable

---

6. No similar specific claims for charitable status for the Grove Cemetery are made on this appeal.

that the [cemetery's] funds are not used *exclusively for charitable purposes,*" as the statute requires. *Id.* (emphasis original). *See also Gund's Estate v. Commissioner, supra,* 113 F.2d at 62; note 3 *supra.*

▮ We cannot accept the broad view of *Dulles v. Johnson,* 273 F.2d 362 (2d Cir. 1959), *cert. denied,* 364 U.S. 834, 81 S.Ct. 54, 5 L.Ed.2d 60 (1960), espoused by the executor, that if the activity of burying the dead were not undertaken by these and like associations, the cost would devolve upon the public, thereby rendering the associations "charitable" in purpose. In *Dulles* this court upheld the deductibility of bequests made from the estate of William Nelson Cromwell to various New York bar associations. That opinion surveyed most of the various activities of the associations, including their efforts at regulating improper and unauthorized practice of law, and concluded that "the total operations of the three [associations] . . . are 'charitable, scientific . . . [and] educational' within the meaning of [what is now 26 U.S.C. § 2055] . . . ." 273 F.2d at 368. Among the factors there present which inclined the court to its conclusion of charitable status, despite incidental economic benefit to members of the legal fraternity, was that if the regulatory "activities were not undertaken by the Associations, the cost of this necessary regulation would descend upon the public." *Id.* at 366. The executor, however, mistakes this single factual element for the entire rationale of the case. The executor contends that since the cemeteries involved herein relieve the public fisc by the perpetual maintenance of the cemetery grounds—a task assumed in cases of neglect by the local governments, *see* N.Y. County Law § 222–5–a (McKinney 1972); N.Y. Town Law § 291–1 (McKinney Supp. 1975)—the cemeteries are "charitable" within the terms of *Dulles.* In *Dulles,* however, it is clear that substantial "charitable"

and "educational" activities of a more traditional sort were continuously being performed by the beneficiary associations: "maintaining libraries for legal research, sponsoring lectures and forums on the law, providing free legal service through participation in legal aid, and providing low cost legal service through participation in a legal referral system." 273 F.2d at 367–68. In our view, *Dulles* should be read for the proposition that public dedication of services by an organization may be colored by a history of that organization's performance of more traditional charitable activities to such an extent that the entire enterprise, or the "total operations" of the association, *id.* at 368, assume the aspect of charitable service to the community.[7] The activities which are not charitable or educational, *e. g.,* social or economic, must be merely "auxiliary" or "incidental in nature." *Id.* By concentrating solely on the factor of relieving public expense, we believe the executor has overlooked the complex of factors upon which the *Dulles* opinion was based. Relief of general tax burdens alone, in a society with some progressivity in its tax structure, cannot be deemed a single, inalienable mark of charity.

Our view is that relief for the public fisc is more symptomatic than evidentiary regarding whether an activity is charitable: charity often results in an absorption of a burden otherwise falling upon the state, particularly where the social welfare is a principal purpose of the state. But this does not mean that activities lessening public expense in any of a myriad of areas of public interest are perforce charitable.

The activities of the associations in this case are not, as in *Dulles,* historically infused with such charitable functions as the provision of needed services for free, or at low cost, for those who cannot otherwise afford them. *See also Eastern Kentucky*

---

7. In this regard, *see also Schuster v. Nichols,* 20 F.2d 179, 181 (D.Mass.1927):

The position of the word "charitable," in a sentence including religious, scientific, and educational purposes, all of which would be regarded as charitable purposes under the

statute of 43 Eliz., points irresistibly to the conclusion that Congress was here using the word "charitable" in its more narrow and restricted sense, as signifying those corporations which were organized and maintained exclusively for eleemosynary purposes.

*Welfare Rights Organization v. Simon,* 165 U.S.App.D.C. 239, 506 F.2d 1278, 1288–89 (1974) (Revenue Ruling 69–545 allowing nonprofit hospitals to qualify as "charitable" for income tax purposes upheld), *vacated and remanded on other grounds,* —— U.S. ——, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Nor is the noncharitable function or activity, the sale of burial plots, merely "incidental" or "auxiliary." In this context, we find that the executor has failed to sustain the qualification of the cemeteries as charitable entities under § 2055.

 Judge Port was also correct in holding that the two cemetery associations do not qualify as "religious" entities under § 2055. Here, as in the case of "charitable" status, it must again be assumed that a cemetery could be so organized as to constitute a "religious" entity under the estate tax provisions, 26 U.S.C. § 2055(a). *Cf. Gund's Estate v. Commissioner, supra.* In fact, we have been informed on argument of this case that many cemeteries directly associated with and under the supervision of particular churches have been treated by the Commissioner as "religious" activities for purposes of § 2055, even though church or church-owned burial plots are not given free of charge except to occasional indigents. *See also Estate of Elizabeth L. Audenreid,* 26 T.C. 120 (1956). The executor claims that Grove Cemetery and Watertown Cemetery should be similarly treated, despite their lack of religious affiliation, because burial in general serves a religious purpose. While burial may, in many or most instances, serve a religious function, note 9 *infra,* the fact remains that the cemetery associations in this case do not themselves perform that function. The district court found that "[a]ny prayers or religious ceremonies performed in connection with the burial are performed by clergymen or others in no way associated with the Cemetery Associations." Furthermore, neither of these associations make religious belief or religious services a requirement for burial in their cemeteries. Thus neither directly nor indirectly have these cemeteries presumed to dedicate their services to an express religious function.[8] This distinguishes these cemeteries from those which operate under the ownership and supervision of particular churches, and are affiliated with the religious objectives of those churches. We believe Judge Port has properly applied the distinction which Congress has set forth.[9] We do not understand the executor to argue that such à distinction, long present within the tax laws of the United States, is unconstitutional. *See Walz v. Tax Commission of the City of New York,* 397 U.S. 664, 672–80, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). Accordingly, we affirm the judgment of the district court, leaving to congressional wisdom the apparent anomaly establishing different treatment of nonprofit cemetery associations for income and estate tax purposes.

Judgment affirmed.

8. The possibility, of course, remains that the officers of the associations subjectively intend that their cemeteries serve a religious function. They may feel that their open-mindedness regarding the persons and procedures for burial in their cemeteries itself serves the religious spirit of open brotherhood among men, *see* note 9 *infra.* This, however, is too remote to provide for recognition as a "religious" entity under 26 U.S.C. § 2055. Many people may conduct their affairs in a religious spirit; the thrust of the tax exemption for religious activities is aimed, no doubt, at form as well as content. *See Scripture Press Foundation v. United States,* 285 F.2d 800, 152 Ct.Cl. 463 (1961) (corporate charter insufficient to assure that profits from sales of religious books are applied to religious purposes), *cert. denied,* 368 U.S. 985, 82 S.Ct. 597, 7 L.Ed.2d 523 (1962).

9. The per se argument is also made that burial as such is a religious function, a Christian act of piety, which, originally performed by the churches, came by virtue of denominationalism to be performed by civil governments and voluntary corporations. In this respect, burial of persons without religious affiliation or with views antagonistic to religion, it is suggested, is either "charitable" in nature, a function of American "civil religion," or simply a part of the Christian tradition in our society. *See* M. Gatch, Death: Meaning and Mortality in Christian Thought and Contemporary Culture (1969). This argument is, we think, better addressed to Congress than to the courts.

ROBERT P. ANDERSON, Circuit Judge (dissenting):

I dissent from the holding of the majority in this case because the statutes, regulations and cited decisions, as interpreted and applied in this case, produce a result which is manifestly arbitrary, unfair and unjust and which does not afford equal protection of the law.

I must concede at the outset, however, that the majority opinion, parallels the weight of authority as expressed in prior tax court and reviewing court decisions in this area of the tax law. Only one other Court of Appeals, however, has ruled on the precise issue in a thirty-six year old decision, *Gund's Estate v. Commission*, 113 F.2d 61 (6 Cir.), *cert. denied*, 311 U.S. 696, 61 S.Ct. 134, 85 L.Ed. 451 (1940), which does not reflect "the changing economic, social and technological precepts and values of contemporary society." *Eastern Kentucky Welfare Rights Organization v. Simon*, 165 U.S.App.D.C. 239, 506 F.2d 1278, 1288 (1974), *vacated on other grounds*, —— U.S. ——, 96 S.Ct. 1917, 48 L.Ed.2d 450, (1976); [1] see also *Green v. Connally*, 330 F.Supp. 1150, 1159 (D.D.C.) (three-judge court), *aff'd mem.*, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971); IV Scott, Trusts § 368, at 2855–56 (1967). Even the *Gund's Estate* court recognized that despite its holding on the facts before it, "A cemetery association doubtless could be so organized and operated as to be a charitable organization within the meaning of the act . . . ." 113 F.2d 61, 62.

I offer three highly relevant considerations. First, this court has stated that an organization may be classified as one organized and operated exclusively for charitable purposes if it performs functions which, absent the organization, "would descend upon the public," *i. e.*, on government. *Dulles v. Johnson*, 273 F.2d 362, 366 (2 Cir. 1959), ·*cert. denied*, 364 U.S. 834, 81 S.Ct. 54, 5 L.Ed.2d 60 (1960); see also *Trinidad v. Sagrada Orden*, 263 U.S. 578, 581, 44 S.Ct. 204, 68 L.Ed. 458 (1924); *St. Louis Union Trust Co. v. United States*, 374 F.2d 427, 432 (8 Cir. 1967); *McGlotten v. Connally*, 338 F.Supp. 448, 456 (D.D.C.1972) (three-judge. court). The Treasury Regulations which define "charitable" for purposes of Internal Revenue Code § 501(c)(3) expressly recognize that activities "lessening the burden of Government" may bring an organization within that definition. U.S.Treas. Regs. § 1.501(c)(3)–1(d)(2).[2] Although these are definitions which, as the Government argues here, could potentially expand the concept of "charitable", a contrary decision here would not go beyond what is fair and just and it is plainly within the public interest to do so. It seems clear that, were it not for cemetery associations, such as Grove and Brookside (formerly Watertown), responsibility for maintaining burial grounds would devolve upon the government. This would be a matter of both public health, cf. *Starr Burying Ground Association v. North Lane Cemetery Association*, 77 Conn. 83, 58 A. 467, 469 (1904), and general civil responsibility.

1. The "other grounds" on which *Eastern Kentucky Welfare Rights Organization v. Simon* was vacated by the Supreme Court, were that the plaintiffs in that case lacked standing to attack the validity of the Revenue Ruling there in issue. While I would be reluctant in light of this disposition of the case to rely directly on the D.C. Circuit's holding, this should not preclude reference to that court's reasoning. The D.C. Circuit's opinion on the merits was rendered after a careful consideration and rejection of several jurisdictional arguments made by the Government, see 506 F.2d at 1282–86.

2. Internal Revenue Code §§ 170(c) (defining organizations, contributions to which may be deducted for income tax purposes), 501(c)(3)

(defining charitable, religious, and educational organizations exempt from income tax), and 2522 (defining organizations, contributions to which fall within the gift tax charitable deduction), have virtually identical wording to that of § 2055(a). As the Government correctly notes in its brief, these four statutory sections are all subject to the same definition of "charitable." Thus, the Treasury Regulations promulgated under § 501(c)(3) are relevant to the definition of "charitable" under § 2055(a). Similarly, cases defining "charitable" for purposes of §§ 170(c), 501(c)(3), and 2522, some of which are cited herein, are relevant to the problem of defining "charitable" for purposes of § 2055(a).

Indeed, New York law provides that: "Upon the adoption of a resolution therefor, the town board may construct and maintain permanent improvements in any one or more of the classes of cemeteries described herein and may acquire, by purchase or condemnation, additional lands for cemetery or burial ground purposes, whenever in the judgment of the town board it is necessary or advisable that such improvements be made or additional lands be acquired." N.Y.Town Law § 291.3 (emphasis added).

This statute recognizes that, if organizations, such as Grove and Brookside, prove unable to continue proper maintenance of their burial grounds, either the town or the county in which they lie would have to take over this responsibility.[3] Because annual maintenance assessments are not now paid, and perpetual care assessments never were paid, for a number of lots; and because perpetual care assessments paid in years past for other lots do not currently produce sufficient income to pay the costs of upkeep, it follows that gifts and bequests, such as those presently at issue, are crucial to the cemetery associations' continued ability to maintain the burial grounds, and thus prevent this responsibility from falling to the county or town governments.

Second, it is generally acknowledged that one means of ascertaining whether an organization or its activities may be deemed "charitable," for tax law purposes, is by analogy to the common law of charitable trusts. *Green v. Connally, supra,* 330 F.Supp. at 1157–58, quoted in *Eastern Kentucky Welfare Rights Organization v. Simon, supra,* 506 F.2d at 1287; *Girard Trust Co. v. Commissioner,* 122 F.2d 108, 109 (3 Cir. 1941). The majority omits any consideration of the common law as it relates to charitable trusts and appears to consider the tax code as if it were as immutable as the law of the Medes and Persians. I do not question the fact that federal statutes and regulations may and do supplant common law principles and rules; but I am attacking the federal policy which produced statutes and regulations which, as applied to the circumstances of the present case, are so grossly unfair and unjust. The experience of mankind over a period of centuries as reflected and embodied in the common law has not been abolished, and it is still of compelling value to weigh that experience and its resultants against the tax policy

3. The record in this case establishes that, when Watertown Cemetery Association was organized, it in fact relieved the Village of Watertown of the necessity of maintaining a village cemetery. Between 1824 and 1853, the Village held and maintained a public cemetery. In the latter year, the Village trustees, recognizing that the existing cemetery was nearing its capacity, obtained an option to purchase additional land. This option provided that if a cemetery association were formed and the Village decided not to purchase the land, the cemetery association could do so. Watertown Cemetery Association was incorporated in 1853 for the sole purpose of procuring and holding lands to be used exclusively for a cemetery. Prior to the meeting of the Village electors to decide whether the Village should buy the new cemetery site, the Village trustees prepared, and distributed to the electors, and published in a local newspaper, a letter, signed by the Village President, stating that

"if the Association should finally determine to go on, the Trustees will most cheerfully abandon the project, as they do not desire to add to the burdens of the Village unless it becomes necessary."

The electors defeated the proposal to purchase the land; immediately thereafter, it was acquired by the Watertown Cemetery Association, which has owned and maintained it as a cemetery to this day. The Village owns and operates no cemeteries for new burials, although it continues to maintain the original cemetery that it operated from 1824 to 1853, but which has long since been filled to capacity. A clearer case of "lessening the burdens of Government" is difficult to envision. See also N.Y.Town Law § 291.1 (Supp. 1975–76), and N.Y.County Law § 222.5(a).

Although § 291.1 contains the phrase, "other than private burial grounds," the Attorney General of New York has rendered an opinion stating that a town board must provide care for all cemeteries located in the village except those presently controlled by an existing board or corporate body and for the care of which there exists no special fund or endowment, regardless of the ownership of said cemeteries or whether they have been or are used as private burial grounds. 1974 Op.Atty.Gen. 100. See also 23 Op.State Compt. 629 (1967) (town board under duty to care for all cemeteries located in the town except those presently controlled by an existing board or corporate body).

applied in the present case, which is so plainly at odds with the public interest.

With this in view we pose the pertinent question: at common law would a bequest in trust for maintaining a cemetery have been deemed charitable, and thus accorded perpetual existence, or would it have been ruled void as in violation of the Rule Against Perpetuities? Careful study of the common law shows that the Haas bequests would be deemed "charitable." Underlying the law of trusts is the concept that a charitable trust is one formed to serve the general welfare and to be beneficial to the community. Restatement 2d, *Trusts*, § 374; IV Scott, Trusts § 374, at 2903 (1967); *Green v. Connally, supra,* 330 F.Supp. at 1158–59, and authorities discussed therein. This underlying characteristic has been recognized by this court in the § 2055(a) context, *Dulles v. Johnson, supra.* The maintenance of cemetery facilities by private or quasi-public associations benefits the community both through its aesthetic effects, see, *e. g., In re Byrne's Estate,* 98 N.H. 300, 100 A.2d 157, 159 (1953), and by the performance of a necessary social task, see *Metairie Cemetery Association v. United States,* 282 F.2d 225, 228 n. 8 (5 Cir. 1960); *Chapman v. Newell,* 146 Iowa 415, 125 N.W. 324, 327 (1910); *Starr Burying Ground Association, supra;* Anno., 47 A.L.R.2d 596, 612 (1956).

At common law, a bequest for the erection or maintenance of a private, individual tomb, grave, or monument ordinarily did not create a charitable trust. IV Scott, Trusts, § 374.9 at 2924 (1967); Restatement 2d, *Trusts*, § 374 comment *h; Gold v. Price,* 24 N.C.App. 660, 211 S.E.2d 803, 804 (1975); *Earney v. Clay,* 516 S.W.2d 59, 67 (Mo.Ct. App.1974); *Driscoll v. Hewlett,* 132 A.D. 125, 116 N.Y.S.2d 466 (2d Dept. 1909), aff'd, 198 N.Y. 297, 91 N.E. 784 (1910); *Green v. Hogan,* 153 Mass. 462, 27 N.E. 413, 414 (1891); but see *In re Byrne's Estate, supra.* On the other hand, a bequest for the creation or upkeep of a "public" cemetery would create a charitable trust. IV Scott, *supra,* § 374.9, at 2925; Restatement 2d, *Trusts,* comment *h; Johnson v. South Blue*

*Hill Cemetery Association,* 221 A.2d 280, 287 (Maine 1966). See also Anno., 47 A.L. R.2d 596, *supra.* The bequests to Grove and Brookside obviously fall between these two polar cases, but there is substantial authority for the proposition that these bequests *would* create charitable trusts under the common law. For example, in *Catholic Bishop of Chicago v. Murr,* 3 Ill.2d 107, 120 N.E.2d 4, 7 (1954), Chief Justice Schaefer wrote:

> "There is a recognized difference between establishing a trust for the upkeep of a private grave and donating land for use as a cemetery. . . . The public character of the latter is precisely the factor which distinguishes a charitable from a private trust. . . . [R]estriction upon sectarian adherence and geographical residence does not, under our decision, make the trust too limited in benefits to be characterized as charitable."

*Newton v. Newton Burial Park,* 326 Mo. 901, 34 S.W.2d 118 (1931), involved a bequest in trust, with income to be used by a cemetery corporation to build a chapel, and to beautify and maintain the cemetery. The cemetery had been established for the burial of white persons; burial lots were sold at a price sufficient to pay the expenses of maintaining the cemetery, and any excess funds were used to make additional improvements. The Missouri Supreme Court held that the bequest created a charitable trust and did not violate the Rule Against Perpetuities. See also *Opinion of the Justices,* 101 N.H. 531, 133 A.2d 792, 794 (1957); *Pope v. Alexander,* 194 Tenn. 146, 250 S.W.2d 51, 53–55 (1952); *Davie v. Rochester Cemetery Association,* 91 N.H. 494, 23 A.2d 377, 378 (1941); *Chew v. First Presbyterian Church,* 237 F. 219 (D.Del.1916); *Bliss v. Linden Cemetery Association,* 81 N.J.Eq. 394, 87 A. 224, 225 (1913); but cf. *Hopkins v. Grimshaw,* 165 U.S. 342, 352–53, 17 S.Ct. 401, 401 L.Ed. 739 (1897) (dictum).

In *Parker v. Fidelity Union Trust Co.,* 2 N.J.S. 362, 63 A.2d 902 (1944), the court, after a lengthy citation and discussion of

authorities, held that bequests for the care, maintenance, or improvement of a "public or semipublic" burial ground are charitable in nature, and stated that such bequests are "uniformly" considered to be thus. The court further stated that a cemetery, even though maintained by a private corporation, may fairly be deemed a public burial ground (and bequests for its upkeep therefore may be deemed charitable), if it is open, under reasonable regulations, to the use of the public for the burial of the dead. 63 A.2d at 917. (The cemetery in the *Parker* case had been operated by a private individual who sold burial lots therein to the general public, as a private enterprise.) Such is apparently the case here. There is no indication that any person is refused burial in these cemeteries on any grounds other than non-payment of the purchase price of a lot or other normal fees. Rather, the record shows that there are no restrictions on burials in Brookside and that it refuses burial to no one. Cf. N.Y. Not-for-Profit Corporation Law § 1401(a).

There are hundreds of cemetery associations in this country similar to Watertown Association. They are non-profit, voluntary organizations incorporated under state statutes, for the purpose of creating a legal entity dedicated to providing and maintaining a decent burial place for deceased persons. Historically they have been supported by modest charges for sales of lots; and also by gifts or bequests of $100 to $500 for "perpetual care," sums held in trust by the association for the purpose. Vastly increased cost of labor and materials to keep the cemetery cared for and maintained and the reduced value of the dollar have made it increasingly difficult for these associations to carry out their functions. They render a great public benefit at no cost to the public treasury and clearly come within the gener-

al concept of a charitable use, even from the point of view of the tax law.

Third, it is irrational and a denial of equal protection of the laws to exempt bequests to cemeteries which are owned and operated by churches, and at the same time deny the exemption to bequests to cemeteries such as Grove and Brookside.[4] Although it could be argued that the exemption for bequests to church cemeteries is based on their religious nature (see *Estate of Elizabeth L. Audenried*, 26 T.C. 120 (1956)), and not on their charitable nature, this is a distinction without a difference. Both church cemeteries and private cemeteries perform substantially the same functions. Indeed, it is stipulated in this case that:

"Watertown Cemetery Association and Grove Cemetery Association, with regard to their cemeteries, and municipalities and religious organizations, with regard to their cemeteries, perform the same general function of providing and maintaining a place for the burial of the dead."

The record also shows that two church owned cemeteries, presumably exempt under § 2055(a), lie adjacent to Brookside. I see no significant "religious" purpose in the fact that a church cemetery is owned and operated by a church, and/or is physically located on church grounds. The fact that the cemetery associations do not actually perform the religious burial service is irrelevant because this is not an activity related to the ownership, operation, and maintenance of the cemetery, as such. In any event, full religious burial ceremonies and other attendant rites can be and are performed at the private cemeteries.[5]

As to the charitable purposes of the two types of cemeteries, I am aware of no activ-

4. I assume, on the authority of *Estate of Elizabeth L. Audenried*, 26 T.C. 120 (1956), which appears to be the only reported case on point, that an estate tax exemption is routinely available and taken for bequests to church owned cemeteries. In general the statements made herein about the characteristics and activities of church owned cemeteries are based on common knowledge.

5. The district court's point that "the Cemetery Associations refused burial to no one and . . . an atheist would absolutely be allowed burial in the Cemeteries involved," is so specious as not to require comment, save to point out that the Associations' policies of refusing burial to no one enhances their claim to "charitable" status.

ities in which the typical church cemetery would engage, in its operation of the cemetery, which is not carried out by cemetery associations such as Grove and Brookside. A burial plot in a church yard or church owned cemetery is not granted free of charge except perhaps to occasional indigents. Also, a church, as do the associations here involved, generally will continue to maintain those lots whose perpetual care or annual assessments no longer provide sufficient income.

Congress has wide latitude in levying taxes; and constitutional restrictions on its decision to tax or not tax particular entities should be narrowly limited. *Fernandez v. Wiener*, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116 (1946); *Helvering v. Gerhardt*, 304 U.S. 405, 416, 58 S.Ct. 969, 82 L.Ed. 1427 (1938); *Helvering v. Independent Life Insurance Co.*, 292 U.S. 371, 381, 54 S.Ct. 758, 78 L.Ed. 1311 (1934); *Flint v. Stone Tracy Co.*, 220 U.S. 107, 158–62, 31 S.Ct. 342, 55 L.Ed. 289 (1911). Cf. *City of Pittsburgh v. Alco Parking Corp.*, 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974); *Kahn v. Shevin*, 416 U.S. 351, 355–56, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974) (local and state taxing powers). Here, of course, the distinction between church cemeteries and private association cemeteries is not necessarily based on a clear legislative mandate, but is more a matter of administrative and judicial interpretation of the tax laws. Nevertheless, to allow a § 2055(a) exemption for bequests to church owned cemeteries, but not for bequests to private, non-profit cemetery associations cemeteries, when these entities are indistinguishable in purpose and function, raises, in my view, clear equal protection problems.

It might, of course, be argued that these cemetery associations are not, as § 2055(a)(2) requires, "organized and operated *exclusively* for" exempt purposes. As a general matter, "the presence of a single substantial non-exempt purpose precludes exempt status regardless of the number or importance of the exempt purposes." *Contracting Plumbers Cooperative Restoration Corp. v. United States*, 488 F.2d 684, 686 (2

Cir. 1973), *cert. denied*, 419 U.S. 827, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974); see also *Better Business Bureau of Washington, D. C., Inc. v. United States*, 326 U.S. 279, 283, 66 S.Ct. 112, 90 L.Ed. 67 (1945). Looking at the organization's total operations, the non-exempt activities must be no more than incidental in nature. *Dulles v. Johnson, supra*, 273 F.2d at 368. Therefore it might be further claimed that the cemetery associations' sale of burial lots to private individuals constitutes a "single substantial non-exempt purpose." But the mere fact that lots are sold should not be controlling. As already noted, church owned cemeteries also customarily charge for burial lots, and yet the taxing authority considers them exempt. Further, payments for products or fees for services do not result in the loss of charitable status in other contexts. A leading example is the case of non-profit hospitals, which under Revenue Ruling 69–545 are accorded charitable status per Internal Revenue Code § 501(c)(3) so long as they "operat[e] an emergency room open to all persons and . . . provid[e] hospital care for all those persons in the community able to pay the cost thereof either directly or through third party reimbursement . . . ." (Emphasis added.) The validity of this Revenue Ruling was upheld by the D.C. Circuit in the *Eastern Kentucky Welfare Rights Organization* case, and although that decision was vacated by the Supreme Court on the grounds that the plaintiffs lacked standing to challenge 69–545, the validity of that Revenue Ruling must be presumed until a contrary judicial decision on the merits is rendered.

Although the Watertown Cemetery Association charges a reasonable sum for burial lot and upkeep and receives payment for indigents from the County Commissioner of Social Services, it maintains, out of general funds, those lots for which specific fees and assessments are no longer sufficient to cover maintenance costs. Insofar as the common law of charitable trusts is again illuminating, it is stated in IV Scott, Trusts, *supra*, § 376, at 2966, that:

"A trust to establish or maintain an institution may be charitable, however, al-

though it is provided that some or all of the persons to receive benefits from the institution are to pay fees or otherwise contribute to the expense of maintaining the institution."

See also *Gingrich v. Blue Ridge Memorial Gardens,* 444 Pa. 420, 282 A.2d 315, 318 (1971).

As the majority opinion states, donations to cemetery associations are deductible for the purpose of the federal income tax and for the gift tax. The property and income of such associations are in most, if not all states, exempt from property, income, and succession taxes. It is certainly an anomaly that the federal estate tax regulations continue to refuse to grant exemptions to portions of estates left to cemetery associations. At least, the regulations should define the uses and functions of funds left to such associations which will qualify them for an exemption.

The plaintiffs-appellants argued below that the bequest to Watertown Cemetery Association was in trust, because only the income could be used, and that it thus comes within § 2055(a)(3), rather than § 2055(a)(2), but the district court did not rule on this claim. This point is important, particularly on the exclusivity issue. When, on the one hand, a bequest is made *directly* to an organization, § 2055(a)(2) requires that it be a "corporation organized and operated exclusively for" charitable, etc., purposes. When a bequest is made in trust, on the other hand, it must satisfy § 2055(a)(3), which requires that the trustee is to *use* the bequest "exclusively" for charitable, etc., purposes. Thus, a bequest is deductible from the gross estate, under § 2055(a)(3), if it is made to a trustee *not* organized and operated exclusively for exempt purposes, so long as the trustee is required to *use the bequest* exclusively for exempt purposes. *Kaplun v. United States,* 303 F.Supp. 733 (S.D.N.Y.1969), *aff'd,* 436 F.2d 799 (2 Cir. 1971).

Here, the bequest to the Watertown Cemetery Association was for the use of its "Endowment Fund;" the bequest to Grove Cemetery Association was to "be used in the general care of the Cemetery." If the evidence shows, as a matter of fact, that these bequests were directed exclusively to the maintenance and upkeep of the respective cemeteries, or that any slight benefit accruing from the sale of lots to either of the cemetery associations was "no more than incidental in nature," *Dulles v. Johnson, supra,* 273 F.2d at 368, the court must hold that, as the Associations only *use the bequests for* maintenance and upkeep of the cemetery, they are therefore used exclusively for a charitable purpose, even though the trustees (the cemetery associations) also engage in the non-charitable activity of selling burial lots as an incidental activity. Under these circumstances an exemption under § 2055(a)(3) should be allowed.

I am of the opinion that the judgment of the district court should be reversed on the ground that the bequests to the cemetery associations should have been held deductible from the gross estate as charitable dispositions under § 2055(a) of the Internal Revenue Code of 1954. In the alternative the case should be ordered remanded to the district court for further evidence, findings and conclusions as to whether the bequests were made to the plaintiffs-appellants in trust under § 2055(a)(3) and were designed to be used by the trustees exclusively for charitable purposes. Moreover, as there is no record evidence (but only assumptions of common knowledge) concerning the operations of church owned cemeteries, bequests to which are held to be exempt from the estate tax, other than in the stipulation of facts, the case must also be remanded for the taking of further evidence and the making of findings and conclusions regarding the issue of whether there are substantial, legally significant distinctions between the activities of such church owned cemeteries and those of the Grove and Watertown Cemetery Associations.