ESTATE OF W. ROBERT AMICK, DECEASED, MARY CHILDS, CHARLES W. DAVEE, AND JOHN CHILDS, CO-EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 736–76.    Filed March 10, 1977.

*D. W. Jurgemeyer,* for the petitioner.
*Thomas L. Kummer,* for the respondent.

OPINION

DRENNEN, *Judge:* Respondent determined a deficiency in the estate tax liability of decedent's estate in the amount of

---

$1,550. The only issue for decision is whether petitioner may deduct for estate tax purposes a bequest of $5,000 to the Scipio Cemetery of Scipio, Ind., made in decedent's will.

All of the facts were stipulated and the case was submitted under Rule 122, Tax Court Rules of Practice and Procedure. The stipulated facts and exhibits attached are incorporated herein by this reference. The pertinent facts are as follows.

Decedent W. Robert Amick died a resident of Scipio, Ind., on July 16, 1973. In his will W. Robert Amick made a bequest of $5,000 to Scipio Cemetery. An estate tax return was filed in behalf of decedent's estate with the District Director of Internal Revenue, Indianapolis, Ind. The return reported a total gross estate of $741,083.51 and a taxable estate of $544,760.70. Among the charitable deductions claimed on the return was the bequest of $5,000 to Scipio Cemetery. In his notice of deficiency respondent disallowed that deduction for the reason that it was not allowable under section 2055, I.R.C. 1954,[1] thereby increasing the taxable estate to $549,760.70.

The town of Scipio, Ind., was laid out and plotted by one William Clapp in 1831. At that time, a cemetery was set aside by one of the original settlers, Obed Amick, containing 2 acres.

On March 16, 1858, Obed Amick and his wife Mary executed a deed purporting to convey the cemetery land to the commissioners of Jennings County, Ind. However, the deed was never recorded.

Obed Amick sold burial plots and maintained the cemetery until his death. After the death of Obed Amick, his son, Albert Amick, took over the sale of grave plots. Albert Amick was the father of Robert Amick. Albert Amick added another acre to the cemetery, which is reflected on a recorded plat in Jennings County, Ind., dated 1886.

After the death of Albert Amick in May 1922, Robert Amick and Chester A. Amick took over the sale of plots and maintenance of the cemetery. Chester A. Amick married and left Indiana in August 1925.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and effective on July 16, 1973.

A cemetery fund was started by Martha E. Amick in 1921 by the assignment of a promissory note dated September 6, 1921, in the amount of $50 for the Scipio Cemetery.

The promissory note was paid off between 1935 and 1945, with the funds being received by Ernest E. Amick as secretary of the Scipio Cemetery.

Another acre was added to the cemetery by deed from Minnie D. Clapp, to the Scipio Cemetery Association, which deed is recorded in Jennings County, Ind., and dated 1937.

In 1939, the cemetery was platted by the officers and directors of the Scipio Cemetery Association, and the plat was recorded showing the cemetery to include 4 acres of land.

During the period 1924 to 1947, Robert Amick was president of the Scipio Cemetery Association, which was formed to administer the fund created in 1921 and to maintain the cemetery and sell cemetery plots. On September 10, 1947, Robert Amick, writing on behalf of the Scipio Cemetery Association, solicited contributions and recapitulated the activities in which the Scipio Cemetery Association had been involved during the previous 10 years. In that letter he indicated that the Scipio Cemetery Association had deposited $650 with the county commissioners of Jennings County, Ind., as the beginning of an endowment fund. Help was solicited to increase the fund to $1,500 by January 1948.

The county auditor of Jennings County invested the fund according to the statute, and turned over the income to the Scipio Cemetery Association for care and maintenance of the cemetery. Subsequently, $550 of the $650 was returned to the Scipio Cemetery Association, and the county auditor continues to hold $100 of the fund which will ultimately be turned over to the Scipio Cemetery Association. The Scipio Cemetery Association has always kept the money from the sale of burial plots as a part of its maintenance fund. The Scipio Cemetery Association has always taken responsibility for maintenance of the cemetery for which it has used primarily income from the maintenance fund.

The Scipio Cemetery Association has continued to sell burial plots. As required by statute, the association has given deeds to the purchasers of plots, which are to be recorded.

The personal representative of the Estate of Robert Amick paid to the commissioners of Jennings County $5,000, pursuant to the decedent's last will and testament,

The Jennings County Commissioners in turn issued their check in that amount to the Scipio Cemetery Association to be held as part of its maintenance fund.

The tax records of Jennings County indicate that the 4 acres of the Scipio Cemetery are exempt from local taxation.

In the petition petitioner claims:

The charitable bequest qualifies as such under Section 2055 of the Internal Revenue Code and, therefore, should have been allowed as a deduction. The Jennings County, Indiana Commissioners own the cemetery.

In his notice of deficiency respondent determined that the bequest "is not allowable as a deduction under Section 2055 of the Internal Revenue Code." Since we did not hear oral argument or receive a brief from representatives of petitioner, we do not know under which provisions of section 2055 or why the bequest is claimed to qualify as a deduction. We assume the claim is based on either paragraph (a)(1) or (a)(2) of section 2055.

Section 2055(a) provides that there shall be allowed as a deduction from the gross estate the value of all bequests—

(1) to or for the use of the United States, any State, any political subdivision thereof, or the District of Columbia, for exclusively public purposes;

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual, * * *

Respondent argues that the cemetery was not operated "exclusively for religious, charitable, scientific, literary, or educational purposes" within the meaning of section 2055(a)(2), and that the bequest was neither to a governmental unit nor for exclusively public purposes within the meaning of section 2055(a)(1). On the record before us we must agree with respondent.

In Rev. Rul 67–170, 1967–1 C.B. 272, it was held that a bequest to a board of trustees, to be expended for the perpetual care of a nonprofit cemetery, owned by a corporation other than a religious organization, is not for exclusively religious or charitable purposes. The rationale of this ruling

was that a cemetery engaged in the business of selling lots for burial purposes is not considered to be one that is operated exclusively for charitable purposes, even though indigents may be buried there without cost, because the primary purpose of the corporation or trustees operating the cemetery and receiving the bequests is to maintain a cemetery for purchasers of burial lots therein. It is the use to which a bequest is to be applied that determines its deductibility and not the motive prompting the bequest.

The rationale of the revenue ruling is strongly supported by *Wilber National Bank, Executor,* 17 B.T.A. 654 (1929), a Board-reviewed case, with facts very similar to the facts in this case. There a bequest was made to a cemetery association, which had been organized pursuant to statute,[2] to be used for the perpetual care of certain specified burial lots with the balance to be used for the general expenses and upkeep of the cemetery. Noting that there was nothing in the will designating the bequest as being for "charitable" purposes, as is also true in this case, the Board said it must decide whether the Cemetery Association is a corporation organized and operated exclusively for charitable purposes within the meaning of the law, which was substantially the same as section 2055(a)(2) of the present law. Finding nothing in the articles of incorporation of the association and nothing in its method of operation that indicated that it was "organized and operated exclusively for charitable purposes," the Board concluded that the association could be said to be "organized and operated exclusively for *cemetery* purposes" (emphasis added) but that that fact, together with the facts that no part of its earnings inured to the benefit of any private persons, that its purposes were public rather than private, and that the real estate was exempt from taxation, does not necessarily qualify it as an organization operated "exclusively" for charitable purposes.

The same reasoning applies to the rather meager facts we have in this case. The bequest was undoubtedly a benevolent act and its use may have been limited to cemetery purposes but that alone does not mean that it was to be used "exclusively for charitable purposes" within the meaning of

---

[2] In the instant case, we have not been told how or under whose authority the Scipio Cemetery Association was organized, or how or by whom it was operated.

section 2055(a)(2). *Gund's Estate v. Commissioner,* 113 F.2d 61 (6th Cir. 1940), affg. a Memorandum Opinion of this Court, cert. denied 311 U.S. 696 (1940); *Child v. United States,* 540 F.2d 579 (2d Cir. 1976). Furthermore, we have no proof that the Scipio Cemetery was operated exclusively for charitable purposes or that it was a public cemetery. See also *Estate of Arthur D. Haley,* a Memorandum Opinion of this Court.

*Estate of Elizabeth L. Audenried,* 26 T.C. 120 (1956), is distinguishable on its facts and is not controlling in this case. There we allowed as a deduction under section 812(d) of the 1939 Code, which is the predecessor of section 2055(a)(2) of the 1954 Code, a bequest to a trust to be used for the improvement and beautification of a church cemetery. We reasoned that since the church was operated exclusively for religious purposes and part of its activity was the operation of the cemetery that it owned, that portion of the bequest to be used for the maintenance of the cemetery is to be used for religious purposes within the meaning of section 812(d). Such reasoning does not apply to the facts in this case; there are no religious connotations involved here. Compare *Estate of Willis D. Wood,* 39 T.C. 1 (1962), wherein we disallowed as a charitable deduction for income tax purposes a bequest to a church for the perpetual care of a particular plot in a cemetery owned by the church.[3]

To be deductible under section 2055(a)(1) a bequest must be "to or for the use of" a governmental unit and also "for exclusively public purposes."

None of the stipulated facts indicate that the Scipio Cemetery was owned by the Jennings County Commissioners. The most that we can find in the stipulation is that the representative of the estate paid $5,000 to the commissioners of Jennings County pursuant to the will and that the Jennings County Commissioners in turn issued their check for $5,000 to the Scipio Cemetery Association to be held as part of its maintenance fund; and that the "Scipio Cemetery Association administers the maintenance fund without supervision by the County Commissioners of Jennings County, Indiana."

---

[3] For a discussion of whether a church-owned cemetery should be classified differently for tax purposes than public or private cemeteries, see dissenting opinion in *Child v. United States,* 540 F.2d 579 (2d Cir. 1976). The facts given us in this case are not sufficient to encourage an extensive review of these issues.

This would indicate that the county commissioners were simply a conduit of the bequest to the cemetery association; and there is nothing to indicate that the association was a governmental unit. Furthermore, the bequest was to the cemetery, not to the commissioners or the association. So this bequest must fail in its threshold test under section 2055(a)(1), that it was made to a governmental unit.

But even if we assume that the bequest was to a governmental unit, it nevertheless fails to meet the requirement that it was "for exclusively public purposes." We have found no cases in which the term "for exclusively public purposes," as used in section 2055(a)(1) is defined, but in *Bank of Carthage v. United States*, 304 F.Supp. 77 (W.D. Mo. 1969), the court indicated that the terms "exclusively for charitable purposes" and "for exclusively public purposes" have essentially the same meaning. As we have pointed out above we cannot find that the Scipio Cemetery was operated "exclusively for charitable purposes." Likewise, we are unable to find from the facts before us that the Scipio Cemetery was operated for exclusively public purposes or that the bequest in question was "for exclusively public purposes." The facts do indicate that the cemetery association sold grave plots to individuals which became the property of the buyer or his representatives and the maintenance fund of which this bequest became a part was used for the maintenance of the cemetery, including the grave plots sold to individuals. The Scipio Cemetery appears to have been more of a private cemetery than a public cemetery. We recognize that the maintenance of a private cemetery in a small locality might be considered in part for the benefit of the public generally but this does not qualify as being for "exclusively public purposes" within the meaning of section 2055(a)(1). *Child v. United States, supra.*

We conclude that the bequest to the Scipio Cemetery is not deductible under section 2055(a)(1) or (2) of the Code.

*Decision will be entered for the respondent.*