## FIRST NAT. BANK IN DALLAS v. COMMISSIONER OF INTERNAL REVENUE.*
### No. 5863.

Circuit Court of Appeals, Fifth Circuit.
Dec. 23, 1930.

*Rehearing denied February 21, 1931.

510

Rhodes S. Baker and Alex Weisberg, both of Dallas, Tex. (R. L. Guthrie and Thompson, Knight, Baker & Harris, all of Dallas, Tex., on the brief), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and C. M. Charest, General Counsel, Bureau Internal Revenue, and Prew Savoy, Sp. Atty., Bureau Internal Revenue, both of Washington, D. C., and J. P. Jackson, Sp. Asst. to Atty. Gen. (J. P. Jackson, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before BRYAN and FOSTER, Circuit Judges, and DAWKINS, District Judge.

BRYAN, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals sustaining a deficiency assessment against the estate of Louis A. Pires, deceased. The Commissioner of Internal Revenue, in determining the amount of the assessment, included in the value of the estate the value of certain property, consisting of bank stock which within two years prior to his death Pires transferred to Elizabeth Bacon, and of an amount which he bequeathed in the residuary clause of his will to several local lodges or subordinate bodies of the York and Scottish Rites of Masonry. The petitioner, temporary administrator and executor of the estate, makes the contentions that both the value of the bank stock and the amount of money represented by the bequest should have been excluded from consideration in arriving at the value of the estate to be taxed; on the grounds that the transfer of the stock took effect before Pires' death, and that the Masonic bodies named as beneficiaries of his bequest were corporations organized and operated exclusively for charitable purposes or were trustees under his will for such purposes.

The facts are stated in much detail in the opinion of the Board of Tax Appeals, 16 B. T. A. 719; and therefore need not be narrated here at any great length.

At the time of his death Pires was eighty-one years of age and unmarried. He lived in Dallas, Tex., and was a close friend of Elizabeth Bacon and her husband. Within less than six months before his death he executed a statement to the effect that he was selling to Elizabeth Bacon 300 shares of bank stock to be transferred to her within ten days after his death. This statement acknowledged receipt of "a sum of money" as consideration, but only $10 was paid, and that amount Pires almost immediately deposited to her credit. The stock was worth $112,500, but it was not transferred during the lifetime of Pires; and after the statement was signed he received one quarterly dividend and another was placed to his credit a day or two before his death.

By his will Pires, after making certain specific bequests, gave the residue of his estate as endowments to the Masonic bodies of Dallas, of which he might be a member at the time of his death, and three other beneficiaries, share and share alike. These Masonic bodies were local lodges or branches of the Grand bodies of Masonry, and all the latter, except one, were incorporated not for business or gain but for fraternal and benevolent purposes. It was stipulated that no gift had been or, without violating Masonic usage or custom of long standing, could be used for any other than charitable purposes. In a suit brought in a state court, heirs at law of Pires challenged the right of the Masonic beneficiaries to take or administer that part of the estate given them by the will. All parties at interest were before the court. In a special verdict the jury found that the funds of Masonic bodies were used exclusively for charitable and educational purposes, and the court entered a judgment to the effect that these bodies were themselves purely charitable organizations.

The assessment was made under the Revenue Act of 1921, which imposes an estate tax upon the transfer of the net estate of every decedent dying after the passage of the act. Section 401. The value of the gross estate is determined by including the value at the time of his death of all property to the extent of the interest therein of which the decedent has made a transfer "in contemplation of or intended to take effect in possession or enjoyment at or after his death * * * except in case of a bona fide sale for a fair consideration in money or money's worth."

Any transfer of a material part of a decedent's property made within two years prior to his death is presumed to have been made in contemplation of death, unless the contrary is shown. Section 402. For taxation purposes the value of the net estate of a resident is to be determined by deducting from the value of the gross estate "the amount of all bequests, legacies, devises * * * to or for the use of * * * any corporation organized and operated exclusively for * * * charitable * * * purposes, * * * or to a trustee or trustees exclusively for * * * charitable * * * purposes." Section 403. 42 Stat. 277, 278, 279.

 The transfer of the bank stock having been made within two years prior to Pires' death must under the terms of the statute be deemed to have been in contemplation of death, since there was no showing to the contrary. The circumstance that Pires continued to receive dividends on the stock after the purported sale, without objection from Elizabeth Bacon, is a clear indication that the transfer was not intended to take effect until after his death. The conduct of both parties interested is inconsistent with the theory advanced by petitioner that the title passed immediately, and that their intention was only that the issuance of a new certificate evidencing a change of ownership should be postponed until after Pires' death. There was no gift inter vivos, as Pires did not deliver possession but remained in control and dominion of the stock. Basket v. Hassell, 107 U. S. 602, 614, 2 S. Ct. 415, 27 L. Ed. 500.

The Revenue Act in question by section 403 exempts from an estate tax, among other things, bequests to corporations which are "organized and operated exclusively" for charitable purposes. The local lodges of which Pires was a member were not incorporated at all, and the Grand bodies of Masonry over them were incorporated not for charitable purposes exclusively, but for fraternal and benevolent purposes as well. Fraternal organizations may be described generally as social in their nature, and designed not exclusively for charitable purposes but for the enjoyment of their members in many ways. 5 R. C. L. 372. Charitable organizations are benevolent, but benevolent organizations are not exclusively charitable. Chamberlain v. Stearns, 111 Mass. 267. Nor are Masonic bodies operated exclusively for charitable purposes, since they carry out also benevolent and other purposes for which they were organized. The Revenue Act also exempts from an estate tax bequests made to trustees exclusively for charitable purposes, but Pires' residuary bequest was not made to the Masonic bodies as trustees; it was given to them, as it was to the other beneficiaries without distinction, as an endowment. The Masonic bodies received their share of the bequest on the same terms as did the other beneficiaries, and so it cannot be said that the word "endowment" was used in a special sense as applied to any one beneficiary, or that it had a meaning understood only by Masons. The bequest could have been used without violating the will for any endowment purpose, including the construction of a temple or building for fraternal and benevolent purposes only. The verdict and judgment in the state court suit were broader than was authorized by the provisions of the will. The government was not a party to that suit, and was not bound by it, but had the right to proceed in its own way to collect taxes, subject only to the limitations imposed by a law of its own making.

The petition for review is denied.