The **BANK OF CARTHAGE,** Trustee Under the Will of John Carter, deceased, et al., Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

No. 2055.

United States District Court
W. D. Missouri,
Southwestern Division.

April 9, 1969.

James A. Dunn, Carthage, Mo., for plaintiffs.

Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., John DeBruyn, Department of Justice, Washington, D. C., for defendant.

ELMO B. HUNTER, District Judge.

## MEMORANDUM FINDINGS OF FACT AND OPINION

This is an action brought against the United States for the recovery of federal estate taxes in the sum of $6,038.49 (and interest) assessed and collected from the Estate of John Carter, deceased. Plaintiffs are the Bank of Carthage, a corporation, as trustee under the will of John Carter, deceased, and Robert A. Carter and Virginia Lee Carter, the children and only heirs-at-law of John Carter, deceased. The plaintiff, Bank of Carthage, was also the executor of the decedent's estate.

By a codicil dated May 21, 1962, John Carter devised the properties known as the Oak Hill Cemetery and the Soldiers' Monument Cemetery near Carthage, Missouri and two business properties (buildings) in downtown Carthage in trust for the operation and improvement of the cemeteries, as will be more fully disclosed. John Carter died May 8, 1963. The executor of his estate took the position the devise of the above mentioned properties was not subject to the estate tax because it was a charitable transaction.

In determining the taxable estate of John Carter, deceased, the District Director of Internal Revenue over the executor's protest included in the gross estate of decedent the mentioned properties in downtown Carthage and the Oak Hill Cemetery and Soldiers' Monument Cemetery, having a total value of $27,-500. Accordingly, an estate tax deficiency was assessed as a result of disallowing the claimed charitable deduction.

### Contentions of the Parties:

Plaintiffs contend the Director erred in making and collecting the deficiency assessed on the basis the trust estate was not charitable and not exempt under the provisions of Section 2055(a) (2) of the Internal Revenue Code. The Government contends the Director correctly found the trust estate not to be a charitable one entitled to a statutory exemption under Section 2055(a) (2). The case was tried to the Court on the basis of these contentions.

The May 21, 1962 codicil after describing and devising in trust the cemeteries' land and business property, provided:

"1. The purpose of the trust shall be the care, maintenance and improvement of Oak Hill Cemetery and Soldiers' Monument and shall be perpetual.

"2. I direct my trustee as in its discretion as it may deem best, to sell, collect and convert into money any such parts of said cemetery or business property and to take the net income from the sale of lots and rentals and to apply these proceeds to the care, maintenance and improvement of said Oak Hill Cemetery and Soldiers' Monument.

"3. I authorize and empower the Trustee to obtain and hold under the trust hereby created said real estate with full powers to sell, make deeds, and to invest and re-invest the proceeds in any investments whether or not said investments are sanctioned by law for the investment of trust funds, as the Trustee, or its successor shall deem best. No purchase from the trustee of any real or personal [property] is bound to inquire into the application by the said Trustee of the purchase price.

"4. I hereby authorize said Trustee in its discretion, to delegate duties and

authorities contained herein to committees of lot owners, or other interested persons, in order to achieve the purposes of this trust which is the maintenance, care and improvement of Oak Hill Cemetery and Soldiers Monument.

"5. In the event that it becomes economically unfeasible to operate this maintenance trust or should said cemetery cease to exist, or cease to be operated as a cemetery, or should it become unwise or impossible to continue the purposes of this trust, I hereby authorize my said trustee, in its sole discretion, to convey said trust estate, with any funds on hand to any charitable, civic or public organization which might carry on the purposes of this trust or serve the purposes of this trust."

Decedent's father was a physician. Unobjected-to hearsay testimony from the president of Park Cemetery which adjoined Oak Hill Cemetery was that when Park Cemetery was started as a for-profit corporation providing perpetual care (about 1909) decedent's father "said that people couldn't afford to pay for perpetual care, and he was going to start a cemetery where he could give graves away if he had to. And around 1909 he started this Oak Hill Cemetery, and sold for much less than we did, and always did." This witness did not know whether or not Dr. Carter ever gave away any grave plots. He did say it was the general practice for any cemetery upon occasion to "give" away graves. "People come to us and they don't have any money, we (Park Cemetery) bury them." Incomplete records of decedent do not disclose whether any such gifts were made of graves in Oak Hill Cemetery by Dr. Carter or by decedent.

In Park Cemetery the prices are: $100 a space up to and including a 10 space lot at $1,000. In Oak Hill Cemetery the prices are $200 for a 10 space lot, $125 for a 5 space lot, $30 for a single space. This was a uniform schedule of charges. Sales per year average $600 to $800 in total amount. There was a modest additional charge for time-price sales. Also, the sexton, as an independent contractor, charged $60 for opening a grave space for an adult and $25 for an infant. This charge was made by the sexton to the purchaser of the plot and the money received was not a part of the trust fund.

All money received from Oak Hill lot sales, less a 25% commission to the sexton for handling the sales goes into the trust fund. Also all rental money from the two business buildings, after maintenance and repairs, goes into the trust fund. The prices charged per lot is based on the estimate of what is required by the trust fund to maintain the cemeteries. There is no profit contemplated or made.

For a short time after the inheritance tax was paid (under protest) by the trust[1] there was not enough money to properly maintain the graves, and some contributions were accepted from families for that purpose. However, this was a temporary practice and was not continued after the loan obtained by the trust to help pay the inheritance tax on the properties in question was paid off in 1967.

Soldiers' Monument Cemetery requires a separate explanation. It consists "of two or three acres", and is located south and immediately adjoining Oak Hill Cemetery. It was established by a group of people many years ago, and was transferred to Dr. Carter provided he would complete the monument on it. He accepted and completed the monument about 1894. This monument was in memory of the war dead of the nation. It is simply "a monument and beautiful grounds, with no burials in it." The monument and accompanying two or three acres are maintained by the trust.

1. There is no showing as to whether a purchaser of a cemetery lot gets substantially the same quality of services, lot and lot care at Oak Hill as at Park. It is noteworthy that Park sells more cemetery lots albeit at a higher price per lot than Oak Hill sells.

*Discussion:*

■ It is fundamental that an estate otherwise subject to the Estate Tax can not successfully claim an exemption from that tax unless there is specific statutory authority for the claimed exemption. Plaintiffs base their claim of exemption on Estate Tax Section 2055(a) (2) which provides for deductions from the gross estate for transfers "to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual * * *." Plaintiffs claim, and to succeed in this action must prove, that the trust *was organized and operated exclusively* for charitable purposes within the meaning of Section 2055(a) (2), for the burden of proof is on the executor who claims the deduction.

The term charitable purposes has been defined in many ways. The common element is that the trust purposes are designed to accomplish objects which are beneficial to the community or area. The usually recognized charitable purposes where not otherwise limited by statute are generally classified as (a) the relief of poverty; (b) the advancement of education (c) the advancement of religion (d) the protection of health (e) governmental or municipal purposes (f) other varied purposes the accomplishment of which is beneficial to the community. See, Restatement of the Law, Trusts 2d, Sec. 368, pages 246–47; St. Louis Union Trust Company v. United States, 8 CCA 1967, 374 F.2d 427.

■ Where the nature of the particular trust purpose, as here before the Court, is the relief of poverty it appears implicit that the direct beneficiaries of the trust must be poor persons, or persons in poverty conditions rather than any and all persons indiscriminately. In the instant case it is apparent from the evidence that anyone can purchase a lot in Oak Hill Cemetery at a standard price per lot regardless of that person's financial situation.[2]

■ It appears the rich, the poor, and the in-between are treated alike. There is no credible evidence of any established policy to give a lot to anyone unable to afford to buy one, or even to give a reduced price to those who cannot afford the regular price of a cemetery lot in Oak Hill Cemetery. Thus, the conclusion is inescapable that the trust property and funds are not used *exclusively for charitable purposes.*

■ While the standard prices of lots at Oak Hill are substantially below those of its neighbor, Park Cemetery, that fact does not make the Oak Hill operation a charitable one. A non-profit cemetery is not per se qualified for the estate tax exemption of Section 2055(a) (2) as that law is presently written. Cf. Estate of Arthur D. Haley, P. 48, 191 P–H Memo TC 601; Gund's Estate v. Commissioner of Internal Revenue, 6 Cir., 113 F.2d 61.

■ Plaintiffs reason that inasmuch as the Internal Revenue Service has granted an exemption from federal income tax under the provisions of 26 U. S.C.A. Section 501(c) (13)[3] the same type exemption should apply here. The

2. The county has a cemetery called "Jasper County Cemetery". It is used for the burial of people without relatives or funds.

3. 26 U.S.C.A. Section 501(c) (13) provides as an income tax exempt organization: "Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit * * *." The United States Treasury Department by letter of March 25, 1965, has determined this trust as created and operated is exempt from federal income tax and that contributions to it are deductible by donors in computing their taxable income as provided by Section 170 of the 1954 code.

short answer is that the estate tax statutes do not contain the counterpart of income tax Section 501(c) (13). Its absence in the estate tax statutes, illustrates if anything, an intent by Congress not to include as an estate tax exemption, the exemption set out in Section 501(c) (13) to estate tax situations. Cf. Hopkins v. Grimshaw, 165 U.S. 342, 353, 17 S.Ct. 401, 41 L.Ed. 739. It is exclusively the province of Congress in its wisdom to determine whether it wishes to provide in its estate tax statutory exemptions all those appearing in its statutory income tax exemptions.

*Soldiers' Monument Cemetery:*

■ A trust for the maintenance of a historic patriotic monument and the grounds it reasonably occupies is generally held to be a charitable trust. 15 Am. Jur.2d, Charities, Section 81, page 87; Annotation, 12 A.L.R.2d Sec. 7, pages 888 ff.; Restatement of the Law, Trusts 2d Section 374(e) page 258. As earlier indicated in this opinion, Soldiers' Monument Cemetery, in spite of its name, is in fact no more than a historical-patriotic monument to all war dead. It is not now a cemetery, nor has it ever been used as one, according to the evidence. It is not a part of Oak Hill Cemetery. It is a separate two or three acre parcel of land and monument located adjacent to Oak Hill Cemetery. It is within the estate tax exemption contained in Section 2055(a) (2) of the internal revenue code as it is used exclusively for charitable, i. e. patriotic purposes. Plaintiffs are entitled to a refund of that portion of the estate tax and interest erroneously assessed and collected on Soldiers' Monument Cemetery.

Judgment shall be entered in accordance with this opinion. The attorneys for the parties shall submit to the Court a computation of the judgment amount or advise the Court within thirty days if agreement cannot be reached.