The **FIRST NATIONAL BANK OF OMAHA, Executor of the Estate of Glenn W. McIninch, deceased, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 81–2122.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1982.

Decided June 28, 1982.

Rehearing and Rehearing En Banc Denied July 30, 1982.

---

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Robert A. Bernstein, Laurie A. Snyder, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee; Thomas D. Thalken, U. S. Atty., Omaha, Neb., of counsel.

\* The Honorable J. Smith Henley assumed senior status on June 1, 1982.

Frank Matthews of Matthews, Cannon & Riedmann, P. C., Omaha, Neb., for appellant.

Before HEANEY, BRIGHT and HENLEY,* Circuit Judges.

HENLEY, Senior Circuit Judge.

This is an appeal from an adverse decision rendered by the district court in an action initiated by the executor of the estate of Glenn W. McIninch for a refund of estate taxes paid. It concerns the deductibility for estate tax purposes of two bequests made by the decedent in his last will and testament.

After this claim was filed in the district court, the parties filed cross-motions for summary judgment on stipulated facts, and these motions were referred to a magistrate, who subsequently recommended that the government's motion be granted. In his proposed findings and recommendations, the magistrate determined that neither a $100,000.00 bequest in trust for the benefit of the Walnut Grove Cemetery Association, nor a $20,000.00 bequest to the Fontenelle Chapter of the Order of the Eastern Star (a fraternal society) was restricted to use for exclusively charitable purposes, and thus these bequests were not deductible for estate tax purposes under 26 U.S.C. § 2055. The executor filed a motion in opposition to the magistrate's proposed findings; however, after a hearing on this motion, the district court adopted the magistrate's findings and entered an order dismissing the complaint.

After careful consideration, we affirm the judgment of the district court, 532 F.Supp. 251, although we do so for somewhat different reasons than those relied on by that court.

McIninch died in 1975 and left the bulk of his estate to charity. One of his bequests was of $100,000.00 to the Walnut Grove Cemetery Association [1]

1. The magistrate, in his report and recommendation, stated:

 [The Walnut Grove Cemetery Association] is a non-profit association organized and oper-

to be maintained as a Perpetual Care Trust Fund pursuant to Section 12–510 of the Revised Statutes of Nebraska, 1943, on condition, however, that the officers of the Association select the Omaha National Bank as trustee of said Fund to serve in manner provided by Sections 12–509 through 12–512.08, inclusive, of the Revised Statutes of Nebraska, 1943. The earnings on the Fund established by this bequest to the extent permitted by Nebraska law shall be applied first toward maintenance of the McIninch family plot and the balance of the earnings shall then be used for the general beautification and maintenance of the entire cemetery.

The will further stated:

It is my hope that the Walnut Grove Cemetery, with the assistance provided by this bequest, can be preserved as an historic spot in recognition of the early settlers of Nebraska buried there.

The executor contends that the bequest is deductible as a bequest to a trust for charitable purposes under 26 U.S.C. § 2055(a)(3). The executor also asserts that the imposition of a tax on this bequest, where similar bequests made to church-owned, not-for-profit cemeteries are routinely exempted from taxation, constitutes a denial of equal protection of the law.

The cases relied upon by the United States have dealt primarily with the deductibility of bequests under 26 U.S.C. § 2055(a)(2). This subsection allows an estate tax deduction of the value of all bequests "to or for the use of any corporation organized and operated exclusively for ... charitable ... purposes," and its focus is on the purposes for which the ultimate beneficiary of the bequest operates.

There is no direct authority in this circuit regarding the charitable status under subsection (a)(2) of cemetery associations such as Walnut Grove, and the decisions from other jurisdictions dealing with this issue are by no means uniform. Those jurisdictions holding that bequests to or for the use of cemetery associations are "charitable" have focused primarily on the public nature of the services performed by such associations. Thus, in *Estate of Edwards*, 88 Cal. App.3d 383, 151 Cal.Rptr. 770 (1979), the California Court of Appeals stated:

Cemetery's fundamental responsibility is the proper disposal of human remains. That function is critically important to society because it insures that society is not subject to disease from decomposing human remains. Absent Cemetery's presence in the private marketplace, and the presence of other similarly situated cemeteries, government would be required to provide that crucial service. Hence, in our view, Cemetery's presence and continued operation in the private marketplace effectively lessens the burden of government.

*Id.* 151 Cal.Rptr. at 776. That court concluded that cemetery associations are charitable within the meaning of the inheritance tax portion of the California Revenue and Taxation Code. *Id. See Child v. United States*, 540 F.2d 579, 585 (2d Cir. 1976) (Anderson, J., dissenting), *cert. denied sub nom. National Bank of Northern New York v. United States*, 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538 (1977); *Stubblefield v. Peoples Bank of Bloomington*, 406 Ill. 374, 94 N.E.2d 127, 132 (1950); Restatement (Second) of Trusts § 374 comment h.

Those cases holding that cemetery associations such as Walnut Grove are not charitable within the meaning of subsection (a)(2) have focused on the fact that such associations do not provide free burial space for the indigent, nor is less than fair value

ated for the purpose of maintaining the Walnut Grove Cemetery in Brownville, Nebraska. It is governed by a Board of six trustees who serve without pay. It is non-sectarian and is not affiliated with any municipal or state governmental unit. It sells burial lots to the public at reasonable price and makes provision for maintenance of the cemetery grounds. It sells perpetual care contracts at a price of $50 for each grave space but does not require the purchase of such a contract as a precondition for burial. It once maintained a paupers' field but no longer does so. The only prerequisite for burial is to purchase a grave space outright or make arrangements for installment payment. There have been a few occasions when full payment was never received.

ever charged for maintenance. *Child v. United States*, 540 F.2d at 583–84; *Gund's Estate v. Commissioner*, 113 F.2d 61, 62 (6th Cir. 1940), *cert. denied*, 311 U.S. 696, 61 S.Ct. 134, 85 L.Ed. 451 (1941); *Bank of Carthage v. United States*, 304 F.Supp. 77, 80 (W.D.Mo.1969). The underlying logic of this approach is that "[a]n organization which does not extend some of its benefits to individuals financially unable to make the required payments reflects a commercial activity, rather than a charitable one." *Federation Pharmacy Services, Inc. v. Commissioner*, 625 F.2d 804, 807 (8th Cir. 1980). Further, the argument that such associations are charitable because they perform a "public" function has been rejected by these courts. In *Child v. United States, supra,* Judge Oakes, writing for the majority, stated:

> Our view is that relief for the public fisc is more symptomatic than evidentiary regarding whether an activity is charitable: charity often results in an absorption of a burden otherwise falling upon the state, particularly where the social welfare is a principal purpose of the state. But this does not mean that activities lessening public expense in any of a myriad of areas of public interest are perforce charitable.

> The activities of the associations in this case are not, as in [*Dulles v. Johnson*, 273 F.2d 362 (2d Cir. 1959), *cert. denied*, 364 U.S. 834, 81 S.Ct. 54, 5 L.Ed.2d 69 (1960) ], historically infused with such charitable functions as the provision of needed services for free, or at low cost, for those who cannot otherwise afford them. *See also Eastern Kentucky Welfare Rights Organization v. Simon*, 165 U.S.App.D.C. 239, 506 F.2d 1278, 1288–89 (1974) (Revenue Ruling 69–545 allowing nonprofit hospitals to qualify as "charitable" for income tax purposes upheld), *vacated and remanded on other grounds*, [426] U.S. [26], 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Nor is the noncharitable function or activity, the sale of burial plots, merely "incidental" or "auxiliary." In this context, we find that the executor has failed to sustain the qualification of the cemeteries as charitable entities under § 2055.

*Id.* at 583–84.

A final argument employed by these courts is that Congress has never intended that associations such as these qualify as charitable organizations for estate tax purposes.

> From the first revenue act to the last, Congress has consistently and persistently placed charitable and religious institutions in one class and cemeteries not operated for gain in a distinct and separate class; that wherever provision has been made permitting deduction by individuals of gifts and contributions, one class has been included and the other not mentioned; and, finally, when Congress determined that it was proper that income paid to or set aside for such cemeteries should be permitted as a deduction, such intention was made evident in no uncertain manner and such cemeteries were described with most meticulous exactness. We should not join together classes which Congress has seen fit to put asunder. . . .

*Craig v. Commissioner*, 11 B.T.A. 193, 200, *quoted in Gund's Estate v. Commissioner*, 113 F.2d at 63. *See Bank of Carthage v. United States*, 304 F.Supp. at 81.

With this background in mind, we turn to the executor's contention that the bequest is deductible under 26 U.S.C. § 2055(a)(3). This contention essentially stems from the provision in the will that all income earned by the trust fund established by the bequest is to be used for the maintenance of the cemetery. The executor asserts that all income earned by the trust is thus deductible for income tax purposes as a charitable contribution under Sections 642(c) and 170(c)(5) of the Internal Revenue Code, and that the bequest establishing the trust therefore qualifies under Section 2055(a)(3) as a bequest "to a trustee . . . to be used by such trustee . . . exclusively for . . . charitable . . . purposes . . . ." *Id.*

Unlike subsection (a)(2), subsection (a)(3) focuses on the use for which a bequest is to

be applied, and not upon the eleemosynary nature of the ultimate beneficiary of the funds. *See National Savings and Trust Co. v. United States*, 436 F.2d 458, 460 (Ct.Cl. 1971). In addition, even if the cemetery association cannot qualify as a charitable organization under subsection (a)(2), the cases are divided as to whether the word "charitable" should be used in the same sense throughout subsection 2055(a). *Compare, e.g., Child v. United States*, 540 F.2d at 581 n.4 ("[O]ur decision . . . depend[s] on the meanings of 'charitable' and 'religious' as those words are used throughout § 2055(a), and not on the different wording of subsections (2) and (3) . . . .") *with National Savings and Trust Co. v. United States*, 436 F.2d at 460–61 (Even where a bequest to a foreign governmental body does not qualify as a bequest to a domestic governmental subdivision under subsection (a)(1) or as a contribution to a charitable organization under subsection (a)(2), it can nevertheless qualify for a deduction under subsection (a)(3) if the gift is clearly restricted to charitable purposes.) *and Kaplun v. United States*, 436 F.2d 799, 801–04 (2d Cir. 1971) (to the same effect).

■ We have carefully considered both of the approaches outlined above, and we believe the approach taken by the Court of Claims in *National Savings and Trust Co. v. United States* is the better one. As we have stated, the focus of subsection (a)(3) is entirely different from that of subsection (a)(2), in that subsection (a)(3) focuses on the use of the funds, rather than the character of the beneficiary of the funds. And we are not prepared to hold that the charitable or noncharitable characterization of the ultimate beneficiary of the funds as determined under subsection (a)(2) is necessarily determinative of the characterization of the use to which such funds are put

under subsection (a)(3). Such a construction seems at odds with Congress' purpose of encouraging charitable contributions, and would arguably eliminate much of the independent effect that subsection (a)(3) may have.[2] *See Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979); *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307–08, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961) (Where a statute admits a reasonable construction which gives effect to all of its provisions, the court will not adopt a strained reading which renders one part a mere redundancy.); *National Savings and Trust Co. v. United States*, 436 F.2d at 461; *Continental Illinois National Bank and Trust Co. of Chicago v. United States*, 403 F.2d 721, 738 (Ct.Cl.1968) (Davis, J., dissenting), *cert. denied*, 394 U.S. 973, 89 S.Ct. 1456, 22 L.Ed.2d 752 (1969).

■ Neither, however, are we able to agree with the executor that the availability to the trust of an income tax deduction for "charitable" contributions should control the estate tax consequences of such contributions. One of the income tax sections relied upon by the executor, 26 U.S.C. § 170(c)(5), provides:

(c) Charitable contribution defined.—*For purposes of this section*, the term "charitable contribution" means a contribution or gift to or for. the use of—

\* \* \* \* \* \*

(5) A cemetery company owned and operated exclusively for the benefit of its members, or any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, if such company or corporation is not operated for profit and no part of the net earnings of such company or corporation inures to the benefit

---

**2.** In this regard, we observe that subsection (a)(2) deals with gifts "to or for the use of" charitable organizations. Thus, subsection (a)(2) embraces both gifts made directly to charitable organizations, and gifts in trust for the use of charitable organizations. It is also clear that subsection (a)(3) may also, in certain circumstances, apply to substantially similar gifts in trust. However, if language of subsection (a)(3) dealing with gifts in trust for charitable purposes necessarily depends upon the charitable nature of the beneficiary of the trust money as defined in subsection (a)(2), then all such language in subsection (a)(3) becomes surplusage.

of any private shareholder or individual.

(Emphasis supplied.) Similarly, the other income tax statute relied upon by the executor, 26 U.S.C. § 642(c), allows an income tax deduction to trust for any income set aside for "a purpose specified in section 170(c) or . . . to be used exclusively for . . . charitable purposes, . . . or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit." There is nothing in either of these sections or in Section 2055 indicating a legislative intent that the income tax definitions of charitable contributions are to be used for estate tax purposes as well. *See Gund's Estate v. Commissioner*, 113 F.2d at 63–64; *Bank of Carthage v. United States*, 304 F.Supp. at 80–81; S.Rep.No.1622, 83d Cong., 2d Sess., *reprinted in* [1954] U.S.Code Cong. & Ad.News 4621, 4660.

■ In these circumstances, we must do as subsection (a)(3) suggests, and look to the use to which the funds are to be put by the trustees. *See National Savings and Trust Co. v. United States*, 436 F.2d at 460; Rev.Rul. 67–170, 1967–1 C.B. 272. The question thus becomes: Is the use of the bequeathed funds pursuant to the provisions of the will a use "exclusively for charitable purposes"?

■ In *Bank of Carthage v. United States*, Judge Hunter said:

The term charitable purposes has been defined in many ways. The common element is that the trust purposes are designed to accomplish objects which are beneficial to the community or area. The usually recognized charitable purposes where not otherwise limited by statute are generally classified as (a) the relief of poverty; (b) the advancement of education (c) the advancement of religion (d) the protection of health (e) governmental or municipal purposes (f) other varied purpose the accomplishment of which is

beneficial to the community. See, Restatement of the Law, Trusts 2d, Sec. 368, pages 246–47; *St. Louis Union Trust Company v. United States*, 8 CCA 1967, 374 F.2d 427.

304 F.Supp. at 80. We are in substantial agreement with this definition, and therefore we will look to it in determining whether the bequest is to be used for a charitable purpose.

■ We have already determined that the fund does not benefit the poor, and we also think it clear that the bequest does not advance education or religion.[3] Nor do we think the *maintenance* of a cemetery is an activity that may be considered a governmental function or a function that protects health. *Cf. Child v. United States*, 540 F.2d at 583–84 ("Charity often results in an absorption of a burden otherwise falling upon the state. But this does not mean that activities lessening the public expense . . . are perforce charitable.").

■ It remains to be determined whether the fund has a purpose which is beneficial to the community. One argument is that the fund is beneficial to the community in that it serves the community's interest in having available plots of land for the burial of the deceased. The purpose of this particular fund, however, is not to provide such plots, but rather to maintain them. Further, although the maintenance of such plots is arguably in the community's interest, we are unable to conclude that this particular bequest acts primarily to serve such an interest.

We observe that the funds "to the extent permitted by Nebraska law shall be applied first toward maintenance of the McIninch family plot." Such language does not indicate that the benefit to the testator is merely incidental.

In this regard, we think the rationale of *Griffin v. United States*, 400 F.2d 612 (6th Cir. 1968), may be applied. In *Griffin*, the

---

**3.** The language in the will expressing a hope that the cemetery will be maintained for historical purposes will not aid the executor in this regard. That language is precatory in nature, and thus cannot be said to be a clear restriction

to use for an historic purpose. *See Mississippi Valley Trust Co. v. Commissioner*, 72 F.2d 197, 199 (8th Cir.), *cert. denied*, 293 U.S. 604, 55 S.Ct. 119, 79 L.Ed. 695 (1934).

testator had by will set up a trust, with the income of the trust to be used "for the education of my grandchildren and for the education of deserving boys and girls." Under the provisions of the will, the trustee was to use so much of the trust income as was necessary to assist any of the testator's grandchildren in their pursuit of a college education, and the balance of any income not so used was to be used to provide scholarships to other deserving persons desiring a college education. The Sixth Circuit, in holding that the bequest was not deductible as a charitable or educational bequest, stated:

> We believe that the trust provisions applicable to the grandchildren constitute a private trust to which the testator intended to and did give absolute precedence. It does not resemble a public educational trust where some relatives may benefit because they are part of the general class, whether specifically preferred as in [*Estate of Agnes C. Robinson*, 1 T.C. 19 (1942)] and [*Estate of Annie Sells*, 10 T.C. 692 (1948)], or not, as in *Schoellkopf v. United States*, 124 F.2d 982 (2d Cir. 1942).

400 F.2d at 616.

In the instant case, the trust income is to be applied *first* to the maintenance of the McIninch plot, and the *balance* to the general maintenance of the cemetery. This language is indicative of an intention to give absolute precedence to non-public ben-

eficiaries (the McIninch family), and not a mere preference to such beneficiaries as members of a permissible class of general beneficiaries.

 Further, although the will purports to restrict the noncharitable use of the trust income by reference to Nebraska law, the parties have not cited, and we have not found, any Nebraska statutes or cases which impose meaningful or substantial restrictions on such private uses.[4] In the absence of such restrictions, we are not prepared to hold that the noncharitable uses to which the trust income may be applied are merely incidental. *See Mississippi Valley Trust Co. v. Commissioner*, 72 F.2d 197, 199 (8th Cir.), *cert. denied*, 293 U.S. 604, 55 S.Ct. 119, 79 L.Ed. 695 (1934). Accordingly, the judgment of the district court, as it relates to this bequest, is affirmed.[5]

 We also affirm the district court's judgment as it relates to the bequest to the Fontenelle Chapter of the Order of the Eastern Star. The Order is a Masonic Order, and such Orders cannot be said to be operated exclusively for charitable purposes, as they carry out social and fraternal, as well as charitable purposes. *First National Bank in Dallas v. Commissioner*, 45 F.2d 509, 511 (5th Cir. 1930), *cert. denied*, 283 U.S. 845, 51 S.Ct. 492, 75 L.Ed. 1454 (1931). Consequently, the bequest to the Fontenelle Chapter may qualify as a charitable bequest only if the testator has limit-

---

4. It is well settled that state law cannot govern the federal tax consequences of a particular transaction or event unless the applicable federal statute "by express language or necessary implication makes its own operation dependent on state law." *Mississippi Valley Trust Co. v. Commissioner*, 72 F.2d at 200. Here, however, we are not looking to Nebraska law for the purpose of applying its definitions to Section 2055. Rather, we look to the state law in these limited circumstances solely for the purpose of determining whether the reference to such law *in the testator's will* imposes any meaningful, substantial restriction on the use to which the bequeathed funds may be applied.

5. We note that the executor's equal protection argument is meritless. In passing on the constitutionality of the statute in these circumstances, the appropriate standard is a "relaxed scrutiny" standard, "under which a statutory classification will not be disturbed 'if any state of facts may reasonably be conceived to justify it.'" *Merchants National Bank v. United States*, 583 F.2d 19, 24 (1st Cir. 1978), *quoting McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). In the case at bar, the interment of deceased persons in church-owned property can obviously have a religious significance that is quite independent of any charitable considerations. *Child v. United States*, 540 F.2d at 584. Further, Congress could properly consider religious groups as being beneficial and stabilizing influences in community life, and Congress could also consider a classification of cemeteries as "religious" or "non-sectarian" to be useful, beneficial, and in the public interest. *See Walz v. Tax Commission of the City of New York*, 397 U.S. 664, 673, 90 S.Ct. 1409, 1413, 25 L.Ed.2d 697 (1970).

ed the use of the bequest to exclusively charitable purposes. *Mississippi Valley Trust Co. v. Commissioner, supra.* "[T]he testator and he alone must provide for the charitable bequest.... [T]he provision by the testator must be one that is definite in ascertainment and legally enforceable; it must possess the qualities of a definite command...." *Id.* at 199. Further, limitations on the use of a bequest must be conclusively established by competent and admissible testimony. *Marine Midland Trust Co. of Southern New York v. McGowan,* 223 F.2d 408, 409 (2d Cir. 1955). *See Levey v. Smith,* 103 F.2d 643, 647 (7th Cir.), *cert. denied,* 308 U.S. 578, 60 S.Ct. 94, 84 L.Ed. 484 (1939).

In the case at bar, the testator has not placed any restrictions on the use of the bequest by the Fontenelle Chapter. Accordingly, the bequest cannot be said to have been made exclusively for charitable purposes. *Mississippi Valley Trust Co. v. Commissioner,* 72 F.2d at 199. The judgment of the district court, as it relates to this bequest, is also affirmed.

Affirmed.