**MELLON BANK, N.A. and Robert B. Reed, Jr., Executors of the Estate of A. Leon Davis a/k/a Austin L. Davis, Deceased**

v.

**UNITED STATES of America, Appellant.**

**No. 84–3541.**

United States Court of Appeals, Third Circuit.

Argued March 28, 1985.

Decided May 21, 1985.

Rehearing Denied June 18, 1985.

J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Robert A. Bernstein, Douglas G. Coulter (argued), Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellant.

William McC. Houston, John F. Meck (argued), Houston, Houston & Donnelly, Pittsburgh, Pa., for appellees.

Before ALDISERT, Chief Judge, and SLOVITER and STAPLETON *, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

We must determine whether a bequest to a nonprofit cemetery was deductible for estate tax purposes as a bequest to an organization operating exclusively for "charitable" purposes under section 2055(a)(2) of the Internal Revenue Code.

■ The pertinent facts are not disputed. A. Leon Davis died testate on December 6, 1976. His will provided that the residue of his estate was to be distributed to the Verona Cemetery, Oakmont, Pennsylvania, of which $30,000 was to be applied to the erection of a new utility building, with the balance to go to the cemetery's endowment fund. Davis' executors filed a Federal Estate Tax return for the estate, paid the tax,

---

trict court abused its discretion in awarding a multiplier of two to account for contingency).

* Hon. Walter K. Stapleton, who was Chief Judge, United States District Court for the District of

Delaware, sitting by designation at the time of argument, has since been appointed to the Court of Appeals.

and then filed a claim asserting a charitable deduction of $370,901.74 (the total amount distributed to the Verona Cemetery), and claiming a tax refund of $97,-557.15, plus interest. The Internal Revenue Service disallowed the charitable deduction and denied the claim for a refund. After exhausting administrative remedies, the executors filed this action for a refund. All facts were stipulated. The government and the estate filed cross-motions for summary judgment, and the district court granted summary judgment for the estate, 590 F.Supp. 160. The government appeals.

The Verona Cemetery Association was established by nearby residents in 1881 as a non-stock, nonprofit corporation for the purpose of providing burial space to any person regardless of religion or race. It is not owned by or affiliated with any religious group or governmental unit. The cemetery consists of approximately 8.5 acres, most of which are used for 8,490 burial plots, all of which have been or soon will be sold. There are also some general utility buildings, a nondenominational chapel, and a centrally located Civil War Memorial, at which public Memorial Day services are held annually.

The cemetery receives revenues from the following sources: sale of grave sites; grave openings; an endowment charge of $150.00 per grave site for deposit in the Endowment Fund; annual mowing charges for grave sites on which no endowment charge was imposed at the time of sale; charges for headstone foundations; two privately established trusts which generate approximately $400.00 a year; a small charge for burial of cremation ashes; and a $10.00 deed and endowment charge when a lot owner conveys directly to a third party. The early history of the cemetery's treatment of indigents is unknown. In recent years, there has been no established practice either authorizing or denying free or reduced rate services for indigents, and no request for such services has been made. The cemetery has, on occasion, provided grave openings and not been paid due to an alleged lack of funds. The cemetery has been found to be an exempt organization for Federal Income Tax purposes, state sales tax, and county and local real estate taxes, and also qualifies as a charitable organization for purposes of the Pennsylvania Inheritance Tax Act.

The pertinent provision of the Internal Revenue Code of 1954 allows a deduction from the taxable estate of bequests:

to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, ... no part of the net earnings of which inures to the benefit of any private stockholder or individual, which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in ... any political campaign on behalf of any candidate for public office

26 U.S.C. § 2055(a)(2) (1982). The sole question on appeal, as below, is whether the cemetery is a "corporation organized and operated exclusively for ... charitable ... purposes."

The district court held that the bequest to the Verona Cemetery did qualify for a deduction under § 2055(a)(2). The court recognized that the weight of case precedent favored the government, but stated that language in the Supreme Court's recent decision in *Bob Jones University v. United States*, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983), required reevaluation of that view. There, the Supreme Court, in considering the tax status of a university as a charitable institution under an income tax provision, 26 U.S.C. § 501(c)(3) (1982), stated that in order for an organization to be entitled to tax-exempt status it must meet "certain common-law standards of charity", that is, it "must serve a public purpose and not be contrary to established public policy." *Id.* at 586, 103 S.Ct. at 2026.

The district court read this language expansively stating that the "contemporary view of 'charity' considers the benefit to the community as a whole." The court then stated, "The maintenance of cemetery

facilities by cemetery associations benefits the community both through its aesthetic effects and by the performance of a necessary social task." Additionally, the court noted that if the cemetery were to become insolvent, the burden of maintaining it could fall on the borough. Pa.Stat.Ann. tit. 53, § 47804 (Purdon 1966). Therefore, the district court concluded that public nonprofit cemeteries are charitable organizations because of the important social function they perform and the concurrent lessening of the burden of the public fisc.

Although the executors argue that the *Bob Jones University* case requires that we construe the word "charitable" by looking to the common law concept of charity, we believe we are not free to do so in light of the framework of the Internal Revenue Code, and its treatment of "charitable" organizations.

Section 501(c)(3), the provision at issue in the *Bob Jones University* case, deals with those organizations that are exempt from taxation for income tax purposes. Deductibility of contributions made to such organizations is covered in section 170 which provides that a taxpayer who makes contributions to the organizations covered by section 501(c)(3) may deduct those contributions for income tax purposes. Thus, "charitable" organizations are exempt from taxation under section 501(c)(3) and contributions to "charitable" organizations are deductible from the taxpayer's income under section 170(c)(2)(B).

Other subsections of those statutory sections provide explicitly for nonprofit cemeteries, thus suggesting that such organizations are not encompassed within the meaning of "charitable" organizations. Section 501(c)(13) provides separately for exemption from income tax for:

> [c]emetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for the purpose of the disposal of bodies by burial or cremation which is not permitted by its charter to engage in any business not necessarily incident to

that purpose and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

26 U.S.C. § 501(c)(13) (1982). This exemption has been independent from that for "charitable" organizations since 1913. *See* The Tariff Act of 1913, ch. 16, 38 Stat. 114, 172; Revenue Act of 1921, ch. 136, 42 Stat. 227, 253.

There was no specific provision for deduction for income tax purposes of contributions to cemetery companies until 1954. At that time, as part of a general revision of the Internal Revenue Code, section 170(c)(5) was added to permit deduction of contributions to cemetery companies meeting the same description as set forth in § 501(c)(13). The Senate Report on the 1954 Code stated that this amendment "*extend[ed] the deduction* for charitable contributions beyond those allowed under present law to contributions made to nonprofit cemetery and burial companies." Senate Finance Comm., Report on Internal Revenue Code of 1954, 83d Cong., 2d Sess. *reprinted in* 1954 U.S.Code Cong. & Ad. News 4621, 4660 (emphasis added).

In contrast to the legislative treatment of cemetery companies for income tax purposes, the estate tax provision dealing with deductions to "charitable" organizations, 26 U.S.C. § 2055(a)(2), was never specifically "extended" to cover cemetery companies. Thus, it is implausible to construe section 2055(a)(2) to cover a situation which required an amendment to an almost identical parallel provision in the income tax sections to reach that result. Congress' inaction with respect to the estate tax provision is particularly probative given the established case law prior to 1954 denying a deduction for contribution to cemeteries for estate tax purposes. *See Gund's Estate v. Commissioner*, 113 F.2d 61 (6th Cir.), *cert. denied*, 311 U.S. 696, 61 S.Ct. 134, 85 L.Ed. 451 (1940); *Wilber National Bank v. Commissioner*, 17 B.T.A. 654 (1929). *See also Craig v. Commissioner*, 11 B.T.A. 193 (1928) (not deductible for income tax purposes); *Schuster v. Nichols*, 20 F.2d 179 (D.Mass.1927) (same).

As one court has noted, the absence of a counterpart of income tax section 501(c)(13):

> illustrates if anything, an intent by Congress not to include as an estate tax exemption, the exemption set out in Section 501(c)(13) to estate tax situations. Cf. Hopkins v. Grimshaw, 165 U.S. 342, 353, 17 S.Ct. 401 [405], 41 L.Ed. 739. It is exclusively the province of Congress in its wisdom to determine whether it wishes to provide in its estate tax statutory exemptions all those appearing in its statutory income tax exemptions.

*Bank of Carthage v. United States*, 304 F.Supp. 77, 81 (W.D.Mo.1969).

The government suggests no reason why Congress would have chosen to treat deductions to cemetery organizations differently for income and estate tax purposes. As the Second Circuit recognized, Congress has wrought an "anomaly" by "establishing different treatment of nonprofit cemetery associations for income and estate tax purposes," but, like that court, we leave this anomaly to "congressional wisdom." *Child v. United States*, 540 F.2d 579, 584 (2d Cir.1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538 (1977). It may be that such "anomalies" are inevitable in any body of statutory law as complex as the Internal Revenue Code. As the Supreme Court has noted, "[l]egislatures have especially broad latitude in creating classifications and distinctions in tax statutes." *Regan v. Taxation with Representation*, 461 U.S. 540, 547, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983). Whether the "anomaly" brought to our attention in this case was intentional or an oversight, it is not for us to amend the statutory language to provide for deductions for bequests to nonprofit cemetery associations when Congress has failed to do so.[1]

■ Finally we need consider only briefly the executors' argument that disallowance of this deduction when it would be allowed for a deduction to a church-related cemetery violates the establishment clause of the First Amendment and the equal protection guarantees of the Fifth Amendment. The parties agree that the establishment clause issue must be addressed in light of the three-part test set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971):

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion ...; finally, the statute must not foster "an excessive government entanglement with religion".

The executors argue that, as applied, section 2055(a)(2) has the "primary effect" of advancing religion, thus falling under the second part of the *Lemon* test.

A similar argument was presented to the Supreme Court in *Walz v. Tax Commission of New York*, 397 U.S. 664, 675, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970), dealing with the tax exempt status of religious organizations. The Court recognized that "[e]ither course, taxation of churches or exemption, occasions some degree of involvement with religion". *Id.* at 674, 90 S.Ct. at 1414. Nonetheless, the Court upheld the constitutionality of property tax exemptions for religious organizations, after consideration of the untoward effect of abolishing the exemption. The Court found that exemption not only minimizes entanglement of the state in religion, *id.* at 676, 90 S.Ct. at 1415, but has proven historically to pose no danger of encouraging the establishment of religion, *id.* at 676–80, 90 S.Ct. at 1415–17.

We believe that the Court would find the same reasoning applicable to a statutory scheme permitting the deductibility of contributions to religious organizations. Grant of the deduction for contributions (or, as here, bequests) for organizations devoted exclusively to religious purposes

---

1. Because we find the legislative history and framework dispositive, we need not decide whether, under an independent analysis, we would regard the activities of a non-profit cemetery to be "charitable". *But see First National Bank v. United States*, 681 F.2d 534, 540–41 (8th Cir.1982), *cert. denied*, 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 952 (1983).

avoids a government inquiry into whether churches were organized for any of the other exempt purposes, *e.g.*, whether they were organized for "charitable" purposes, an inquiry that might pose grave dangers to the values fostered by the religion clauses. Also, as did the Court in *Walz*, we note that the historical availability of deductions for contributions to religious organizations has not been shown to foster the establishment of religion. The provisions before us, therefore, are unlike the scheme at issue in *Committee for Public Education v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973), upon which the executors rely. In that case, the state had established a new system of tax benefits for parents of children attending non-public schools, which was found to advance the sectarian activities of religious schools. This case is governed by the holding in *Walz* where the Court found that the exemption did not violate the establishment clause because there is no "genuine nexus between tax exemption and establishment of religion." 397 at 675, 90 S.Ct. at 1415.

Since Congress' statutory treatment of religious organizations, and bequests thereto, can be upheld on the ground that it avoids entanglement with religion, this constitutes a sufficiently valid basis for the classifications challenged by the executors, and we therefore also reject the executors' equal protection argument.

Moreover, the executors' argument, even if successful, would not redound to their benefit, since at most the deduction permitted for religious affiliated cemeteries would be impermissible. Such a holding would not entitle these executors to the deduction they seek.

For the reasons set forth above, we will reverse the district court's entry of summary judgment for the plaintiffs and direct that judgment be entered for the government.

ALDISERT, Chief Judge, dissenting.

The Republic will still stand even though this court is divided on what constitutes a deductible bequest for estate tax purposes in a very narrow provision of the Internal Revenue Code of 1954. The majority reasonably interprets 26 U.S.C. § 2055(a)(2) and concludes that a bequest to a non-profit cemetery is not deductible for estate tax purposes. I am not inclined to join in their acceptance of the government's position, because I have not been persuaded that there is a rational justification for this paradox:

* A contribution to a non-profit cemetery is deductible for income tax purposes if you make it during your lifetime.

* A contribution to a non-profit cemetery is *not* deductible for estate tax purposes if you make it by bequest in a will.

The government admits that this does not make much sense. The government concedes that there is no identifiable public policy justification for the distinction. Nevertheless, the government argues that because Congress created this anomaly, Congress also must eliminate it.

The centerpiece of the government's argument is that Congress has enacted a special income tax deduction for contributions to non-profit cemeteries. 26 U.S.C. § 501(c)(13). From this, the government would have us conclude that in 1954 it was the Congressional intention, at that time, to include a deduction for income tax purposes, but not for estate tax purposes.

My own research into the legislative history of the Code, however, indicates that there was no discussion that Congress intended to exclude the deduction for estate tax purposes in 1954. The point simply was not discussed, and at oral argument, the government conceded as much. I agree that § 501(c)(13) was an attempt to clarify the general charitable deduction provision of 26 U.S.C. § 170(c)(2)(B) (contributions to a corporation organized and operated exclusively for charitable purposes) which is the income tax counterpart to the estate tax statute under interpretation in these proceedings (bequests to a corporation organized and operated exclusively for charitable purposes).

288

I believe, however, that the 1954 omission for estate tax purposes was a technical drafting oversight, and I argue that the inaction of Congress cannot be construed as an expression of congressional intent when interpreting the meaning of "charitable purposes" in § 2055(a)(2) which, it must be emphasized, is our primary responsibility today.

Thus, I go back to the language of the general estate tax statute we are called upon to construe. Like District Judge McCune, I turn to the latest teachings of the Supreme Court set forth in *Bob Jones University v. United States*, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983), to learn what is a charitable purpose. There the Court said that for a corporation to be entitled to tax exempt status under § 501(c)(3) it had to meet "certain common-law standards of charity," and that this meant that it "must serve a public purpose and not be contrary to established public policy." *Id.* at 586, 103 S.Ct. at 2026. I believe that the non-profit cemetery here met that purpose both under common law traditions and Pennsylvania tax law. And I believe that what the Supreme Court has said in interpreting the general charitable deduction provision of the income tax statute is equally applicable to the estate tax provision.

In taking a contrary view, the majority seems to recognize the inequity of the result, but would leave "this anomaly to Congressional wisdom." I would not. I would remove this blatant inconsistency now by judicial action. Walter V. Schaefer, the distinguished legal scholar and retired justice of the Illinois Supreme Court, once discussed "the judge's unspoken notion of the function of his court." He wrote that if a judge "views the role of the court as a passive one, he will be willing to delegate the responsibility for change, and he will not greatly care whether the delegated authority is exercised or not." Schaefer, *Precedent and Policy*, 34 U.Chi.L.Rev. 3, 23 (1966). In this case, I suppose that I am not passive, because, considering the priorities of the *realpolitik*, I doubt that Congress will get excited enough ever to act on this highly technical problem. I think the courts must act, otherwise the inequities and inconsistencies presented in this case will be with us forever. Accordingly, I would affirm the judgment of the district court.